Dorothy ALLEN, Plaintiff-Appellee,

v.

BENEFICIAL FINANCE COMPANY OF GARY, INC., Defendant-Appellant.

No. 75–1637.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1975.

Decided Feb. 9, 1976.

Rehearing and Rehearing En Banc Denied May 11, 1976.

Joseph S. Reid, Hammond, Ind., for defendant-appellant.

Frederick J. Ball, East Chicago, Ind., for plaintiff-appellee.

Before CUMMINGS, ADAMS * and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal primarily concerns whether the disclosure statement made in connection with a consumer credit loan by the defendant finance company presented in "meaningful sequence" the disclosures required by Regulation Z, 12 C.F.R. § 226.1 et seq. and the Truth in Lending Act, 15 U.S.C. § 1601 et seq.

I

On April 2, 1974, the plaintiff Dorothy Allen and her ex-husband Mr. Aurelius J. Allen renegotiated a consumer loan from the defendant, Beneficial Finance Company of Gary, Inc. As a result of the renegotiation, Mr. Allen received a check for $453.09, and both Mr. Allen and the plaintiff became liable on a loan for $2,484.00 spread over 36 monthly payments of $69 each. A finance charge of $714.42 was imposed on an amount financed of $1,769.58 leaving an annual percentage rate of 23.54%.

On January 3, 1975, the plaintiff filed the complaint in this action charging, inter alia, that the defendant had not made the required disclosures to her in the credit transaction "in meaningful sequence" as required by Regulation Z. Both parties made motions for summary judgment claiming that there were no material issues of fact left for trial. The trial court granted plaintiff's motion, denied defendant's and awarded plaintiff the statutory penalty of $1,000 and attorney's fees. The court found that the plaintiff signed the note as a "co-borrower" and that by signing the disclosure statement she had acknowledged that she had received a copy of it. The court then went on to find that the disclosures required to be made in the disclosure statement had not been made in "meaningful sequence." The defendant appeals from that decision.

II

■ As a preliminary issue, the defendant claims that the trial court made a procedural error in granting the plaintiff's motion for summary judgment without allowing oral argument or the submission of materials in opposition to the motion. The defendant filed its motion for summary judgment on March 4, 1975. The plaintiff's motion was filed six days later on March 10. The trial court entered its Memorandum Opinion and Order on May 1, 1975 over one and a half months later.

Rule 56 of the Federal Rules of Civil Procedure allows a party to move for summary judgment at any time (except that the plaintiff must wait 20 days after the commencement of the action) with or without supporting affidavits. Fed.R.Civ.P. 56(a) and (b). The motion must be served at least 10 days prior to the time for hearing. Fed.R.Civ.P. 56(c). This was certainly complied with as more than a month and a half passed between motion and judgment. If the defendant had wished to file any

* Circuit Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit is sitting by designation.

other affidavits or had sought oral argument, it had adequate time to request it. Furthermore, the local rules of the Northern District of Indiana foreclose any argument on the defendant's part. Local Rule 7(b) provides:

Motions to dismiss, to strike, for judgment on the pleadings, for more definite statement, and for summary judgment shall be accompanied by supporting briefs and proof of service upon opposing counsel of record. An adverse party shall have fifteen (15) days after service of the movant's brief to file an answer brief with proof of service, and the moving party shall have five (5) days after service of the answer brief to file a reply brief with proof of service. Motions for summary judgment may be accompanied by affidavits and exhibits with proof of service thereof upon opposing counsel. An adverse party may file opposing affidavits and exhibits with proof of service within fifteen (15) days after service of the movant's brief in support of a motion for summary judgment. Failure to file timely briefs in support of or in answer to the motions covered in this rule shall subject such motions to summary ruling, *unless any other party who has timely filed a brief requests a hearing which may then be granted in the discretion of the court.* Failure to file a reply brief within the time prescribed shall be deemed a waiver of the right to make such filing.

The defendant failed to request a hearing. Thus, no procedural error was committed.

### III

Congress passed the Truth in Lending Act to promote "the informed use of [consumer] credit." 15 U.S.C. § 1601. The Act was designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. . ." *Id.* To accomplish these purposes, Congress set out broad disclosure requirements with which creditors must comply before completing a consumer credit transaction. It entrusted the construction of these broad requirements to the Board of Governors of the Federal Reserve System and gave the Board power to prescribe regulations to carry out the purposes of the Act. 15 U.S.C. § 1604. This was a broad grant of power. Section 1604 provides in part:

These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

To comply with this mandate, the Federal Reserve Board issued Regulation Z, 12 C.F.R. § 226.1 et seq. The defendant in this case challenges the validity and constitutionality of one provision of Regulation Z and challenges the propriety of the district court's interpretation of that provision. The provision deals with general disclosure requirements. 12 C.F.R. § 226.6(a) provides in part:

*Disclosures; general rule.* The disclosures required to be given by this part shall be made clearly, conspicuously, *in meaningful sequence,* in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections. (Emphasis supplied.)

A regulation issued under the broad mandate given here will be sustained so long as it is reasonably related to the purposes of the enabling legislation. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The specific section of the underlying Act which supports the challenged provision of the regulation requires creditors to "disclose clearly and conspicuously, in accordance with the regulations of the Board, . . . the information required under this part. . . ." 15 U.S.C. § 1631(a). The Board, through Regulation Z, merely added a meaningful sequence requirement. This addition harmonizes well with both the aim of Congress in

achieving "meaningful disclosure of credit terms" and the Act itself. Certainly, if understandable credit disclosure is to be achieved, disclosure statements must use clear language arranged in an order which provides ease of comprehension. This is meaningful sequence.

■ The Board has given a definitive interpretation to the meaningful sequence requirement only once in Public Position Letter No. 780 (April 10, 1974). The letter reads in part:[1]

The words "in meaningful sequence" in § 226.6(a) relate to a presentation of required disclosures in a logical order with respect to those items which have an arithmetical relationship to each other. For example, many of the items called for in § 226.8(b), (c) and (d) are arithmetical and follow each other in logical progression. The remaining items are informative and have no particular interdependence. A meaningful sequence would call for those items which are arithmetically related to appear within a reasonable proximity to each other, not mixed with items which are irrelevant to a progression of arithmetical computations or thought. We realize that it is not always practical to list the items in vertical order, but in keeping with the purpose of the Truth in Lending Act, they should be placed in reasonable proximity to each other so that the customer will not be required to search for any arithmetical items which should logically follow a previous one.

From the Board's interpretation we can conclude that meaningful sequence involves at least two requirements. The first was noted in *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955, 961 (N.D.Ill.1972). There Judge McLaren wrote:

The statutory purpose of giving the debtor effective notice of the terms and costs of credit is best served if the requirement that disclosures be in "meaningful sequence" is read to mean that those disclosures which are logically related must be grouped together rather than scattered through the contract.

Thus, meaningful sequence first requires groupings of logically related terms. Second, meaningful sequence requires that the terms in these groupings be arranged in a logically sequential order emphasizing the most important terms. The Board means this when it speaks of an "arithmetical progression."

These requirements should not unduly burden creditors who sincerely wish to provide customers with understandable disclosure statements. A clear disclosure statement will naturally fall within the bounds of these requirements. Related terms are normally grouped together to promote clarity. For instance, all those terms which make up the amount financed would normally fall in the same column so that they could be added to arrive at a total amount financed. Similarly, terms that make up the finance charge or the insurance costs would be brought together. Such logical groupings separate different elements of the disclosure statement and should prevent confusion as to the role a term plays. In the same fashion, the natural arrangement for terms in a group is a logically sequential order emphasizing the important terms. In a summation grouping, for instance, the terms making up the sum are placed in a column with the principal terms of the sum at the top and with the total at the bottom. In this way, a person examining the group can easily determine the primary constituents of the sum and can more easily check,

1. For a more complete text of the letter see 4 CCH Consumer Credit Guide ¶ 31,102.

Another public position letter made reference to the meaningful sequence requirement without providing much in the way of a definition. The letter read in part:

With regard to "meaningful sequence," it was not intended that disclosures must be made in the order in which they are stated in § 226.7(a). However, we believe that it would be a violation of the Regulation, for example, to scatter the disclosure of the various elements of the finance charge throughout the contract or agreement.

Federal Reserve Board Public Position Letter No. 545 (Nov. 4, 1971), reprinted in CCH Consumer Credit Guide ¶ 30,759 (transfer binder).

if he desires, to see that the total figure is correct. For instance, in the amount financed column, one would expect to find the sum paid out to the borrowers at the top, and, in the case of refinancing a loan, the amount of the prior loan also near the top. These are the principal elements of the amount borrowed and the borrower would expect to find these terms in a prominent position. In all, then, creditors should not find compliance with these requirements burdensome since the requirements describe the order which naturally promotes clarity.

The requirements of meaningful sequence cannot be applied mechanically or rigidly. As the Board notes, "it is not always practical to list the items in vertical order." Nor is it always possible to arrange terms in all the appropriate groupings. However, what must remain foremost in any consideration of the meaningful sequence of a disclosure statement is that which lies at the core of the requirements— clarity of disclosure. A creditor must be prepared to explain and justify any departure from the requirements of meaningful sequence.[2] Such justification must relate, not to the creditor's convenience or to conformity to the creditor's accounting methods, but must relate to the purposes of the Act. A creditor must show that a departure from the requirements of meaningful sequence enhances clarity of disclosure, facilitates customer comprehension or is required because of the impracticability of any other arrangement. Although the requirements of meaningful sequence mandate no one arrangement and can be fulfilled in many ways, whatever form is chosen must always reflect the dominant purpose of the Truth in Lending Act.

■ The present defendant has failed in almost every respect to provide disclosures in meaningful sequence in the present disclosure statement. The court below cited ten instances in which the disclosure statement failed to set forth the required information in a meaningful sequence. (The disclosure statement is attached hereto as an appendix.) Using some of the district court's examples and some of our own, we shall examine the ways in which this statement fails.

First and foremost, the disclosure statement does not group together terms which are logically related. Starting with perhaps the most important group of terms, the terms which make up the amount financed, these are found scattered across the top half of the statement. The total amount financed appears about midway in the first column. Below it are four of the items which make up the total amount financed, the cost of three types of insurance, and the cost of filing fees. None of these four are principal elements of the amount financed. In this case, the principal element is the "net balance-prior loan" of $1,031.56 which the present loan is refinancing. This was placed towards the bottom of the second column. Unless one studies the form and understands the mechanics of these transactions, this term would not appear to be included in the total amount financed. The other principal term, $453.09, the amount disbursed to the borrowers, is shunted over to the bottom of the third column separated by the width of the form from the total amount financed. No reason is apparent for this placement and for the placement of items 10 through 14 above it (which also are included in the amount financed although blank in the present transaction). Certainly, such placement on the form gives no indication that they relate to the total amount financed.

**2.** The Board writes in Public Position Letter No. 545 (Nov. 4, 1971), CCH Consumer Credit Guide ¶ 30,759 (transfer binder):

In view of these general disclosure requirements, it appears to us that disclosures in the agreement or contract are permissible as long as they are clear and conspicuous, and in meaningful sequence. It would seem that there are a multitude of ways by which the creditor could meet these requirements of the Regulation. However, the Regulation does not prescribe precisely how this is to be accomplished; *therefore, it falls upon the creditor to be able to support his belief that his disclosures meet the requirements of the Regulation.* (Emphasis added.)

The failure to group together the elements of the amount financed is aggravated by the fact that other terms which are not logically related are grouped together. At the bottom of the second column, four terms, "net balance-prior loan," "nature of security," "annual percentage rate," and "default charge," which have nothing whatsoever to do with one another, fall in as close proximity as possible. The "annual percentage rate" is one of the two most important items of disclosure, yet falling as it does only two lines below "net balance-prior loan," it appears to refer to the prior loan. Certainly, it is quite lost, hidden at the bottom of the second column, between two terms, at least one of which is not even required to be disclosed. Moreover, because these terms are placed in close proximity, they draw attention from other disclosures which are not so closely placed. "Net balance-prior loan" is made to appear to have some connection with "nature of security," the "annual percentage rate" and a "default charge," when in fact it has no connection whatsoever. This detracts from the fact that it has a connection with the "amount financed" which appears in another column.

Not only does the form fail to relate arithmetically related terms, but it also fails to keep continuity in at least one descriptive disclosure. The court below noted this about the description of the security interest section of the statement. The court wrote:

> One finds the "Security" description starting in the upper right hand corner of the statement with "security (cont.)" in the middle of the page and no connection between the two for continuity or for the mind to connect the two portions of the page in any meaningful sequence.

The only clearly logical grouping of terms concerns the prior loan. Unfortunately, this grouping when contrasted with the terms of the present loan which are not in close proximity, generates confusion as to what terms relate to the present and what to the prior loan. As the court below noted, the terms of the prior loan, since they are all closely related, stand out and can easily be mistaken for terms of the present loan. In all, then, the defendant by failing to place the terms of the disclosure statement in logically related groups has failed to provide the borrower with an understandable and meaningful disclosure statement.

The defendant's form also violates the other requirement of meaningful sequence—that disclosures of related terms be made in a logically sequential order which emphasizes the most important terms. This primarily applies to the defendant's treatment of the elements of the amount financed. To provide greatest clarity these elements should be arranged in a summation column with the principal terms, the net balance of the refinanced loan and the amount disbursed to the borrowers at the top. The form in no way does this. These two principal terms are found in other columns and the total amount financed is placed above four minor terms in the middle of the first column. Confusion as to what terms of the first column are added to arrive at a total figure is multiplied by the fact that the first column does not contain the complete elements of any sum except the "total of payments," and this sum is confusing because one of its elements, the finance charge, appears twice, first as "precomputed charges" and then as a "finance charge." The need for an arithmetical progression which shows the elements that make up a sum is emphasized by the fact that if the elements of the amount financed on the present form are added, the total is five cents less than the total amount financed.[3]

---

3. The elements of the amount financed that the form discloses are as follows:

| | |
|---|---|
| $1,031.56 | Net Balance-Prior Loan |
| 453.09 | Amount disbursed to borrowers |
| 122.71 | Disability Insurance Cost |
| 48.44 | Life Insurance Cost |
| 111.73 | Household Contents Insurance Cost |
| 2.00 | Filing Fees—UCC Forms |
| $1,769.53 | Total |

The error is not significant, but it points out the fact that when elements of a sum are not placed in a logically sequential order errors, even substantial errors, can easily be overlooked.

█ The defendant tries to justify the layout of its disclosure statement on two grounds.[4] First, the defendant argues that the statement is in subtractional order, stating with the total of payments at the top left and ending, after subtracting out all the other elements, at the bottom right with the amount disbursed to the borrowers. Overlooking the basic flaws with their presentation of the subtractional method,[5] the method itself is a poor one to convey an understanding of the transaction. People do not normally conceive of a loan from a subtractional point of view. They do not start from a total amount of payments and work backwards subtracting a finance charge and other charges so as to arrive at the amount they want to borrow. Borrowers conceive of a loan from exactly the reverse perspective. They have in mind an amount they want to borrow; they want to know how much it will cost in terms of a finance charge; then they add these together (plus other charges) and arrive at their total payments. The subtractional method may make sense to the lender, but not to the borrower. The disclosure form is for the borrower and must be presented in a conceptual framework a borrower can easily comprehend. The subtractional method does not provide such a framework.

Secondly, the defendant appears to suggest that the form was designed so that it could be used in the national computer system to which the defendant is affiliated. If this is the defendant's contention, it is of little value. The creditor's convenience, whether it be the convenience of a computer or the convenience of a clerk, provides no justification for a departure from meaningful sequence on a disclosure statement. When dealing with computers, we must always bear in mind that they are designed to serve humans, and not the reverse. Certainly, the defendant does not suggest that the computer can not print out on a differently designed form. Whatever the defendant's contention concerning the national computer system is, it has no merit, since if it requires disclosure in this form, the information should be transferred to a proper disclosure form by hand. We doubt, however, that this result is necessary.

The defendant's failure to follow the requirements of meaningful sequence has produced a disclosure form which is unnecessarily confusing. Because of this failure, understandable and meaningful disclosure of credit terms has been prevented. The defendant is liable for having violated the meaningful sequence requirement of Regulation Z, 12 C.F.R. § 226.6(a), and the general disclosure requirement of the Truth in Lending Act, 15 U.S.C. § 1631(a).

Whereas: $1,769.58 is the figure disclosed for the Amount Financed. Possibly, the error entered in our reading the figures off the disclosure forms in the record. The forms in the record are not clear, and Beneficial's print-out provides little help since the numbers disclosed more often miss the line than they fall in their proper place.

4. The defendant's grounds of justification are contained in an affidavit from the author of the disclosure statement. The affidavit was filed after the district court's decision in this case, although adequate time had been allowed prior to the decision for such filings. Therefore, we will not consider the materials in the affidavit as substantive evidence, but only as grounds of argument presented by the defendant in its brief.

5. How can the defendant argue that the form is laid out in subtractional order when so many terms which should not be subtracted are included in the order? For instance, the finance charge is entered twice—once as "precomputed charges" and next directly beneath it as a "finance charge." Certainly, the finance charge should only be subtracted once from the "total of payments." Moreover, terms such as "nature of security," and "annual percentage rate" which should not be subtracted are included in the order between "net balance-prior loan" and "default charge," terms which should be subtracted. Suffice it to say that the defendant's subtractional order leaves something to be desired.

## IV

■ On appeal, the defendant challenges the constitutionality of the meaningful sequence requirement of Regulation Z. However, as the plaintiff points out, this issue was only raised after the trial court's decision in this case. The defendant's motion for summary judgment made no mention of it. Rule 16 of the Local Rules of Court for the Northern District of Indiana requires notice of an attack upon the constitutionality of an act of Congress. The rule provides in pertinent part:

*Notice to Court.* Whenever the constitutionality of any act of Congress affecting the public interest is or is intended to be drawn in question in any suit or proceeding to which the United States, or any agency thereof, or any officer or employee thereof, as such officer or employee, is not a party, counsel for the party raising or intending to raise such constitutional issue shall immediately advise the court in writing, specifying the act or the provisions thereof which are attacked, with proper reference to the title and section of the United States Code if the act is included therein.

Since the defendant failed to properly raise the issue below, we will not consider it on appeal.

## V

■ As a final point, the defendant argues that it is not liable to the plaintiff Mrs. Allen as a co-borrower, because the Act does not require the defendant to make any disclosures to her. The general disclosure requirement of the Act, 15 U.S.C. § 1631, provides, in part:

(a) Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this part or part D of this subchapter.

(b) If there is more than one obligor, a creditor need not furnish a statement of information required under this part or part D of this subchapter to more than one of them.

The plaintiff as a co-borrower [6] was a "person to whom consumer credit [was] extended," and, therefore, the defendant under subparagraph (a) has a duty to disclose to her. The question which the defendant poses is whether subparagraph (b) eliminates that duty as to a joint obligor. The defendant would have us equate "a statement of information" in subparagraph (b) with the general disclosure requirement of subparagraph (a) and argues that since it need not have disclosed to the plaintiff under subparagraph (b), it violated no duty to her and therefore is not liable.

The flaw in this reasoning is twofold. First, the reasoning assumes that Congress intended that subparagraph (b) limit the general disclosure requirement of subparagraph (a). There is little to support this assumption. Congress could have assumed that even though a creditor need provide only one disclosure statement, he would disclose to all obligors the information required. Certainly, multiple obligors are expected to look at and rely upon the one statement given.[7]

Secondly, even if the creditor need only disclose to one of multiple obligors, this does not limit the right of other obligors to recover if disclosure to the one has been faulty. Congress could have expected all obligors to be protected by proper disclosure to only one in that the one who received disclosure would certainly take the best credit terms available. Faulty disclosure,

---

**6.** The court found the plaintiff was a co-maker or co-borrower in the transaction.

**7.** The court in *Rivers v. Southern Discount Company Atlanta II,* 4 CCH Consumer Credit Guide ¶ 98,796 at 88,450 (N.D.Ga.1973) wrote:

The Act contemplates, in this Court's opinion, that each borrower is entitled to know the cost of his or her credit prior to signing. Though the Act does require that the creditor furnish only one *correct* copy of the disclosure statement to one borrower, it is contemplated that all borrowers will be able to view that document if they wish in order to glean the required information. If that one copy is incorrect, as in the case at Bar, then each borrower is deceived and each suffers damage.

however, would destroy this protection. Certainly, the other obligors would be as harmed as the one who received the faulty disclosure.

Congress appears to have included subparagraph (b) merely to facilitate compliance with the Act. As the House Report states:

> In order to reduce needless paperwork, disclosure need only be made to one obligor. For example, if two people (e. g. a husband and wife) are the obligors, only one copy of the contract with the required disclosure information would need to be furnished.

H.R.Rep.No.1040, 90th Cong., 1st Sess. (1967) (to accompany H.R. 11601), 1968 U.S. Code Cong. & Admin.News 1962, 1984.[8]

Above all, however, the wording of subparagraph (b) provides the best clue to Congress' intent. Congress did not say disclosure need only be given to one of multiple obligors. Nor did it say that recovery may only be had by one. It said a "statement of information" need only be furnished to one of multiple obligors. From all this we can conclude that Congress by including subparagraph (b) meant only to reduce the burden of paperwork on the creditor, and did not mean to foreclose any right of recovery by a joint obligor.

No other provision in the Act in any way implies a limitation on the right of a joint

obligor to recover under the Act. The language of the civil liability section is clear:

> (a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D of this subchapter *with respect to any person is liable to such person in an amount equal to the sum of*—
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2) (A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000;
>
> \*   \*   \*   \*   \*   \*
>
> (3) in the case of any successful action to enforce the foregoing liability the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640. The defendant Beneficial has failed to provide a meaningful disclosure statement in the transaction in which Mrs. Allen was a joint obligor. As a result, it is liable to Mrs. Allen for $1,000 (that being less than twice the finance charge) plus reasonable attorney's fees to be set by the district court.

Affirmed.

---

**8.** Because this description of subparagraph (b) is set out in the Report under "Methods of Disclosure" instead of a section on disclosure requirements, the emphasis must be placed on the idea of facilitating compliance by reducing paperwork as opposed to reducing disclosure requirements.

APPENDIX

# STATEMENT OF DISCLOSURE AND LOAN REGISTER

As shown hereon, the amount shown below as the Total of Payments, which is the Amount Financed plus the Finance Charge, is payable in successive monthly instalments of principal and charges combined. The Number of instalments and the amounts of the 1st Instalment and the Other instalments are set forth below. The first of said instalments is payable on the 1st Due Date shown below and each subsequent instalment on the same day of each succeeding month thereafter, the final instalment being due 3rd payable on the Final Due Date shown below. The sum of the instalments is shown below as the TOTAL OF PAYMENTS.

LENDER:

BENEFICIAL FINANCE
INCORPORATED
504 BROADWAY
GARY, INDIANA
137705S   TEL. 335 0422;
Type I' TEL:' ;   : 8 P.M

Account No. 71475352 26
Type I

Name & Mailing Address of Borrower(s)   Spouse

ALLEN W. AURELIUS DOROTHY
4916 ASTER ST
G CO 11 46312

Sequential Number
26.16520.9

Residence Address
←if not the same

| Date of Loan | 1st Due Date | Final Due Date | 1st Instal. | Other Instal. | Payable in | Monthly Installments |
|---|---|---|---|---|---|---|
| 04/02/74 | 05/02/74 | 04/02/77 | 69.00 | 69.00 | 35 | |

$ 24.24.00 TOTAL OF PAYMENTS

$ 714.42 Precomputed Charges   $ 1232.00 Unpaid Balance - Prior Loan

$ 161.91 Precomputed Charges

FINANCE CHARGE

$ 714.42

| | | | Time Price Differential |
|---|---|---|---|
| 1. 1749.59 | AMOUNT FINANCED | $ | |
| 2. 122.71 | Disability Ins Cost | $ 24.15 Disability Ins. Cost | Other |
| 3. | Life Ins Cost | 14.30 Life Ins. Cost | |
| 4. 43.44 | Hshld.Conts.Ins.Prem. | | |
| 5. 11.78 | Dwelling Ins. Prem | | |
| 6. N30.C | Auto.Phys.Dam.Ins.Prem. | | |
| 7. 230.5 | | 2. 1031.56 Net Balance - Prior Loan | |
| 8. 2.00 | Filing Fees - UCC Forms | .01 Nature of Security | |
| 9. 15.5F | Certificate of Title Fees $ | 23.54 % ANNUAL PERCENTAGE RATE | Default Charge |

SECURITY: The security for this loan is checked below:

Security Agreement dated  4/3/74

on ☑ Furniture   Yr.   Make
on ☐ Auto
☐ Accommod   ☐ Real Estate
☐ Maker   ☐ Mortgage

INSURANCE IS INCLUDED IF COST OR PREMIUM IS INSERTED TO THE LEFT HEREON.

If the box alongside the word "Furniture" is checked, the Security Agreement identified by the date shown hereon covers all of the consumer goods of every kind then owned or thereafter acquired by the Borrowers in replacement thereof and then or thereafter located at the Borrowers' place of residence set forth hereon. Such Security Agreement secures future advances or loans made by Lender to Borrowers, at Lender's option, within eight years of the date of such Security Agreement.

REBATES

At the direction and request of the Borrowers, on their behalf and for their benefit, the Lender has disbursed, from the Amount Financed, the proceeds of loan for items 2 through 9 shown to the left hereof and for those items shown below as follows:

10. Closing Costs-Real Estate _____ $ _____
11. To: _____ $ _____
12. To: _____ $ _____
13. To: _____ $ _____
14. To: _____ $ _____

Cash or Check Delivered to Borrowers $ 453.09
(Line 1 less sum of lines 2 through 14)

SECURITY (cont)
If the box opposite the description "Real Estate Mortgage" in said Security section is checked, this loan is secured by a mortgage on real property owned by the Borrowers which is the Borrowers' place of residence shown unless otherwise identified below.

Property Other Than Borrowers' Residence

Address _____   City _____   County _____

DELINQUENCY CHARGE The Lender may charge and collect a delinquency charge equal to 5% of an instalment, up to a maximum of $5.00 for any instalment, if such instalment is not paid in full on the tenth day after it is due.

REBATES. Upon prepayment of this loan in full prior to the Final Due Date, the Lender shall make a rebate to the Borrowers of a portion of the Precomputed Charges calculated under the Direct Ratio Refund Method, generally known as the Rule of 78ths, as at the next instalment due date following the date of prepayment in full. If a deferral is granted by the Lender and a Deferral Charge is incurred, the Lender also shall refund to the Borrowers the unearned portion of the Deferral Charge applicable on a pro-rata basis to the unexpired full months of the deferral period The sum of $7.50 shall be retained as a minimum charge when the earned Precomputed Charges on a Principal Amount of Loan over $75.00 are less than $7.50. If the Principal Amount of Loan is $75.00 or less, the sum of $5.00 shall be retained when the earned Precomputed Charges are $5.00 or less.

## Insurance Authorization and Request and Acknowledgement of Receipt of Loan Proceeds and Statement of Disclosure

The undersigned hereby authorize and request the above identified Lender to arrange for the insurance described below and agree to pay from the proceeds of said loan the identifiable cost thereof as set forth above.

*Group credit disability insurance, insuring the designated Principal Borrower against disability during the term of said loan, the benefits of which after 14 days of disability shall be retroactive to the first day of disability and shall be equal for each day of disability to 1/30th of the monthly instalment on said loan.*

*Reducing term group credit life insurance insuring ☐ the life of the designated Principal Borrower or ☐ the lives of the Principal Borrower and the spouse of such Principal Borrower during the term of said loan for the scheduled unpaid balance of the loan at the date of death, or the net-unpaid balance at the date of death, whichever is greater.*

The actual terms of any such insurance shall be those set forth in the Certificate issued in connection therewith.

**The undersigned expressly state and agree that this authorization is made voluntarily, not upon any requirement of the Lender or any of the Lender's employees, and acknowledge that the taking of such insurance is entirely optional.**

*Initial the appropriate box*

☐ I desire Credit Disability Insurance
☐ I do not want Credit Disab. Insurance

☐ I desire Credit Life Insurance
☐ I do not want Credit Life Insurance

☐ I desire Credit Life Insurance
☐ I do not want Credit Life Insurance

Date ....................................... 19 ....
X ...................................................
(SIGNATURE OF PRINCIPAL BORROWER)

Date ....................................... 19 ....
X ...................................................
SIGNATURE OF PRINCIPAL BORROWER)

Date ....................................... 19 ....
X ...................................................
(SIGNATURE OF SPOUSE)

The undersigned further acknowledge receipt from the Lender of a written statement setting forth the premium for insurance written against loss of or damage to property of obtained through the Lender, which insurance is more specifically identified as follows (check box for applicable insurance coverage):

☐ Household Contents Insurance — Fire, Theft and Extended Coverage
☐ Dwelling Insurance — Fire and Extended Coverage

*Automobile Physical Damage Insurance*
☐ Fire, Theft and Windstorm — Towing, Labor Services and Loss of Use.
☐ Comprehensive — Collision — Towing, Labor Services and Loss of Use.

The undersigned further acknowledge that with reference to such above identified insurance coverage so selected, the Lender disclosed the above stated premium for such insurance coverage and, that the undersigned had a choice of the person through which to obtain such insurance coverage.

The undersigned hereby confirms that (1) neither the procurement of the household contents insurance nor the selection of a particular agent was required by the Lender, (2) the Lender informed the undersigned that such insurance could be obtained from any insurance agent or broker and (3) the undersigned understands that it also has the option of furnishing the same insurance coverage through existing policies of insurance owned or controlled by the undersigned.

The undersigned also acknowledge receipt of a Statement of Disclosure as prescribed by the aforesaid Consumer Credit Protection Act of Regulation Z and further agree that the proceeds of loan were received on the date shown below and were disbursed, in accordance with the undersigned's authorization, for the items shown in the box to the right hereof, receipt of the item designated "Cash or Check Delivered to Borrowers" hereby being acknowledged.

X ...................................................
Principal Borrower

Witness ................................... Date .... 4/2 ...... 19 7Y
X ...................................................
Co Borrower

For the Lender named above.

By ................................................... ...Manager

...................................................
(Spouse of Borrower)

The undersigned acknowledges receipt of the Statement of Disclosure — Copy for Spouse of Borrower.