**Keith A. DeJAYNES, Diane M. DeJaynes, and Raymond E. Burger, Wage Earner Trustee, Plaintiffs,**

v.

**GENERAL FINANCE CORPORATION OF ILLINOIS, a corporation, Defendant.**

No. 77–1107.

United States District Court, S. D. Illinois, N. D.

Dec. 7, 1977.

---

Barry M. Barash, Galesburg, Ill., for plaintiffs.

Barney Olson II, Galesburg, Ill., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

The complaint herein arises under the Federal Truth in Lending Act, 15 U.S.C. § 1639, and Regulation Z issued by the Federal Reserve Board in implementation of that Act. 12 C.F.R. 226.6(a), 226.8(a), (b)(2), and (d)(1). Jurisdiction rests upon 15 U.S.C. § 1640(e).

The complaint alleges that the plaintiffs DeJaynes[1] borrowed money from defendant, General Finance, on November 19, 1976, and on that date received from defendant a loan disclosure statement which is attached to the complaint as an exhibit. It is contended that such statement violates the Act and/or Regulation Z, in that: (1) It does not disclose the amount of credit of which the borrowers will have the actual use, either by direct payment to them or by payments to others on their behalf; (2) The disclosures are not made in a logically meaningful sequence, and the same are made in "subtractional" form rather than "additional" form; and (3) The finance charge expressed as an annual percentage rate is not clearly disclosed.

Defendant answered, denying any violation of the Act and affirmatively averring that its disclosures were made in good faith reliance upon regulations and directives issued by the Federal Reserve Board, as the administrator of the Act.

Both parties have moved for summary judgment. There is no dispute as to any material fact. The issue is limited to the question whether the disclosure statement delivered to plaintiffs is legally sufficient to satisfy the requirements of the law.

Plaintiffs' complaint rests upon the theory that the statute requires that a disclosure statement must state, as a separate item of disclosure, the amount of money which a borrower will actually receive "in fist," i. e., the aggregate total of sums paid directly to him and sums paid to other persons on his behalf.

This position is based wholly upon the decision in *Pollock v. General Finance Corporation*, 535 F.2d 295 (5th Cir. 1976), on *pet. reh.*, 552 F.2d 1142 (1977), *cert. denied*, October 11, 1977. That basis of reliance is clear both from their statement of authority filed November 11, 1977, in opposition to defendant's motion, and their motion for summary judgment filed November 14, 1977. Since *Pollock* dealt only with what plaintiffs call the "cash in fist" question, it would thus appear that they are not pressing the "meaningful sequence" or "clear disclosure of rate" contentions. Nevertheless, this decision will deal with the whole range of issues legitimately stated by the complaint.

At the outset, it must be noted that *Pollock* is not a controlling authority in the Seventh Circuit, but that opinion is here fully considered, analyzed and weighed to determine what bearing, if any, it should be given in this case of first impression in this court.

The appeal in *Pollock* sought review of a decision which found several substantive violations of the Act in the disclosure statement there in issue. Included was the failure of such statement to disclose, as a separate item of information, the proceeds of

---

1. Plaintiff Raymond E. Burger is the Wage Earner Trustee for the DeJaynes plaintiffs, duly appointed and acting pursuant to the provisions of Chapter XIII of the Bankruptcy Act.

the loan which the borrower would actually receive in the transaction. The disclosures made in the latter regard conformed fully to the requirements of Regulation Z promulgated by the Board. The court held, *inter alia,* that the failure to separately itemize and disclose that figure was a violation of the Act "because the regulation must be read in light of the statute which requires separate disclosure of the amount borrowed." 535 F.2d at 298.

A petition for rehearing was filed. Therein the creditor argued that it had a good defense to the action under the provisions of § 1640(f) [2] of the Act, in that it had relied in good faith upon a Staff Opinion Letter [3] issued by an employee of the Board. That statute had been enacted while the appeal was pending. In that regard, the court states its opinion that the defense was available to the defendant, but it held that it need not consider the issue because the penalty imposed against the defendant was justified by other violations of the Act. 552 F.2d at 1144.

The Board appeared as *amicus curiae* in support of the petition, arguing in its brief that its Regulation Z reflected the Board's expertise as to the requirements for implementation of the Act, that the Regulation was designed to establish a national standard to guide both creditors and consumers on the requirements of the Act, and that the Regulation was designed to abridge certain apparent contradictions embodied in the literal language of Section 1639 of the Act.[4] Although the court recognized that the disclosure statement did comply with the requirements of Regulation Z, it nevertheless adhered to its decision that the pro-

ceeds of the loan must be specifically itemized. *Ibid,* at 1143–1144.

The hallmark of any construction of the Act must be the principle of liberal construction for the protection of the consuming public. Meaningful disclosure "is the byword of the" Act, and rigorous application to insure that the borrower is fully advised in the "frequently incomprehensible jungle" of consumer credit is required. *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1122 (S.D.Ill.1974). However, rigorous application should not negate reality. The Act imparts the necessary implication that there must be an amalgamation of both conflicting and compatible interests. Paramount is the interest that the consumer of credit be fully and intelligibly informed about the credit transaction in every event. To that end, demonstrable violations must be strictly penalized. A second, but equally essential, interest is that the purveyors of consumer credit be sufficiently apprised of their obligations under the statute that they may act with confidence that their compliance with existing regulations will protect them from multifarious litigation. In the absence of a construction of the statute which will accommodate both of those interests, that of the consumer and that of the lender, the national interest becomes a victim.

Congress designated the Board of Governors of the Federal Reserve System as the agency charged with implementation and enforcement of the Act. In that context, it gave the Board broad authority to adopt regulations to implement the Act. 15 U.S.C. § 1604.[5] "To accomplish its desired

---

**2.** "No provision of this section or section 112 imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstanding that after such act or omission has occurred, such rule, regulation or interpretation is amended, rescinded or determined by judicial or other authority to be invalid for any reason." Pub.L. 93–495, § 406, effective October 28, 1974, 15 U.S.C. § 1640(f).

**3.** Staff Opinion Letter 870, dated April 10, 1974.

**4.** It appears that the court did recognize the existence of that contradiction in its initial opinion. *See* reference to language attributed to District Judge O'Kelley, 535 F.2d at 298. Yet it held in both the initial opinion and the opinion denying rehearing that the literal language of the statute must be read into Regulation Z.

**5.** Section 1604 provides:
"The Board shall prescribe regulations to carry out the purposes of this subchapter. *These* regulations may contain such classifications, differentiations, or other provisions, and may

objective, Congress [by enacting 1604] determined to lay the structure of the Act broadly and to entrust its construction to an agency with the necessary experience and resources to monitor its operation." *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973).

Regulation Z was adopted and became effective on July 1, 1969, the effective date of the Act itself. Pub.L. 90–321, § 504(b), 82 Stat. 167.

The *Pollock* rationale would have the effect of constituting each federal court a super legislature and a super administrator, superimposed above the power and authority which Congress has entrusted to the Board. The purpose of the Act, as defined by Congress, was to assure "a meaningful disclosure of credit terms" to enable the consumer to shop for the best credit terms and "avoid the uninformed use of credit." 15 U.S.C. § 1601. It selected the Board to administer the Act, and accorded to the Board the broad power to promulgate regulations to implement the Act to achieve that purpose. It enjoined lending agencies to comply with the regulations promulgated by the Board. 15 U.S.C. § 1631(a). The obvious intent of the Act was to create, through Board regulations, national standards governing consumer credit. That result can only be achieved by interaction between the chosen administrative agency and the legislative body. All else is chaos. If each court has the power to determine that a regulation of the Board is incomplete, or that it omits some element which the particular court deems essential, then uniform, national application of the Act is an unattainable myth. The construction of the Act would certainly be as divergent as the several views which each of the courts of appeals might espouse.

Thus, it appears to this court that *Pollock* presumes to usurp a function which is beyond the pale of judicial power. It must be assumed that the Congress has knowledge of the fact and content of Regulation Z. It must be further assumed that the Congress is fully cognizant of the actions taken by the Board in the implementation of the Act. Regulation Z has now been in effect for a period in excess of eight years. During that period of time Congress has amended the Act on several occasions, but none of those amendments has touched or affected the provision of the Regulation with which this litigation is concerned.[6] Congressional acquiescence in the Board's construction of the Act imports congressional approval of what the Board has done. *E. g., National Labor Relations Board v. Bell Aerospace Co.,* 416 U.S. 267, 274, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Against the historical background of this Act and this regulation, a decision imposing disclosure requirements which transcend those mandated by the Regulation would entail a legislative determination under the guise of judicial decision. The assumption of such a power by the courts would place each lending agency in a position of acting at its peril on every consumer loan. Though there·be scrupulous compliance with every requirement of the Board's regulation in the consumer credit disclosure made, no such agency could ever be assured that its action could survive the critical scrutiny of some court further down the line in some controversy which would be beyond the realm of foreseeable contemplation.

The disclosure statement which gave rise to this suit cannot be distinguished from that which was before the court in *Pollock.* The one intervening circumstance is the effect of Section 1640(f) of the Act, which the *Pollock* court held that it need not consider. That circumstance provides no meaningful basis to distinguish *Pollock,*

provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith."

6. Pub.L. 91–508, October 26, 1970; Pub.L. 93–495, October 28, 1974; Pub.L. 94–205, January 2, 1976; Pub.L. 94–222, February 27, 1976; Pub.L. 94–240, March 23, 1976.  .

inasmuch as it is yet inherent in the *Pollock* decision that disclosure made in strict reliance upon the Regulation itself was held to be a violation of the Act. Thus, the *Pollock* decision must be respectfully rejected.[7]

■ It is patent upon the face of the disclosure statement given to these plaintiffs that the defendant did meet every requirement of the Board's regulation. Its failure to state, as a separate item of information, the net proceeds of the loan cannot be held to be a violation of the Act.[8]

■ There is no merit to the further allegations that the disclosures were not made in meaningful sequence in violation of 12 C.F.R. § 226.8(a). The disclosure statement contains a logically sequential series of disclosures beginning with the total amount of required payments, the amount of the finance charge, the amount financed, the charge for credit life insurance, the charge for credit disability insurance, the total number of payments and the annual percentage rate. It further sets forth the date and amount of the first payment required, the amount of each payment subsequent to the first, and the date upon which the last required payment would become due. The court can find no legal deficiency in the sequential presentation, and the court is not really advised by the plaintiffs in what manner the disclosures were alleged to be not "meaningfully sequential."

■ Nor is there any merit in the second prong of this position that the statements are made "subtractionally" as opposed to an "additional" form. The disclosed items of information proceed in the sequence above recited, beginning with a statement as to the total amount required to be paid, and continuing with disclosures as to the amount of the finance charge and other numbers which are a part of that total figure. The Regulation does require full and meaningful disclosure, but it cannot be construed to prescribe any particular form.

■ The court is cognizant of certain language in *Allen v. Beneficial Finance Company of Gary, Inc.,* 531 F.2d 797 (7th Cir. 1976), which might be thought to discredit the subtractional method of disclosure. However, each disclosure statement must be considered upon its own merit. The statement involved in *Allen* contained illogical groupings of unrelated numbers, a wholly confusing proliferation and placement of numbers, and a duplication of numbers in one instance. The *Allen* disclosure statement is nowise comparable in form to the disclosure statement with which this court is concerned.

In commentary on *Allen,* the Board, on May 20, 1976, issued its Position Letter No. 1047 stating that the Regulation does not dictate any particular form of statement so long as the placement of disclosure terms used "makes clear the relationship among the various disclosure terms." CCH, Consumer Credit Guide, 13,387. That position was reiterated in an Official Staff interpretation dated March 21, 1977. CCH, Consumer Credit Guide, 13,552.[9]

■ The *Allen* decision and that stated Board position are not deemed to be incompatible. What each requires is that the disclosure form used does state, in a logically meaningful sequence which the average person can comprehend, the information

---

7. Plaintiffs' contention that the doctrine of *stare decisis* should influence this court to follow *Pollock* is a misguided invocation of a wholly inapposite legal principle. That doctrine presumes a common identity of jurisdiction in separate causes of action, presenting a common question of law related to identical fact situations. That doctrine can have no application in this cause, inasmuch as the cause presents a legal question of first impression in this jurisdiction.

8. It is not suggested that these plaintiffs were denied this information. A relatively simple mathematical computation would disclose to them the net proceeds figure.

It is also noted that the disclosure form used by this defendant is substantially identical to the form which the Board disseminated to the public as a model form for compliance with Regulation Z.

9. Also pertinent is Public Position Letter 780, dated April 10, 1974, defining "meaningful sequence."

which Regulation Z requires a creditor to disclose.

The contention in this complaint that the annual percentage rate is not clearly disclosed is wholly specious; and it, also, is apparently abandoned by the plaintiffs. The number is to a degree obscured upon the exhibit attached to the complaint, but the same is wholly discernible.

IT IS ORDERED, therefore, that the defendant's motion for summary judgment is ALLOWED, and the plaintiffs' motion is DENIED. Judgment is entered in favor of the defendant at plaintiffs' cost.