HOUSEHOLD FINANCE CORPORATION *v.*
JOSE A. NIVAL ET AL.

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 984

Argued October 14, 1980 – decided January 23, 1981

*John C. Wirzbicki,* for the appellants (defendants).

*John E. Shields,* with whom, on the brief, was *Mark E. Block,* for the appellee (plaintiff).

BIELUCH, J.  This appeal arises out of alleged violations of the Connecticut Truth-In-Lending Act (hereinafter TILA); General Statutes §§ 36-393 through 36-417; and the regulations promulgated thereunder.[1]

The defendants entered into a consumer credit loan transaction with the plaintiff.  The parties executed a promissory note containing a disclosure statement. When the defendants defaulted on the note, the plaintiff commenced this action to collect the balance due. The defendants raised as special defenses three violations of the TILA and counterclaimed for recoupment.  The parties stipulated to the amount of damages on both the complaint and counterclaim. The trial court found no violations of the TILA and rendered judgment for the plaintiff.  The defendants have appealed, claiming that the trial court erred by finding no violation of the TILA.

If on appeal the court finds that any violation has occurred, then the lower court's decision must be overturned and judgment directed on the counterclaim in

---

[1] Pursuant to regulation Z, 12 CFR § 226.12, Connecticut has been granted an exemption from the federal Truth-In-Lending Act; 15 U.S.C. § 1601 et seq.; and the regulations promulgated thereunder.  Except for exceptions not pertinent to this case, however, the Connecticut and federal statutes and regulations are identical.  *Grey* v. *European Health Spas, Inc.,* 428 F. Sup. 841, 843 n.1 (D. Conn. 1977).

the statutory maximun amount of $1000.[2]  General
Statutes § 36-407 (a) (2) (A); *Sneed* v. *Beneficial
Finance Co. of Hawaii,* 410 F. Sup. 1135, 1138 (D.
Hawaii 1976).

The Connecticut banking regulations mandate that
"disclosures required to be given by these regulations
shall be made . . . in meaningful sequence  . . . ."
Regs., Conn. State Agencies § 36-395-5 (a). The
defendants' first claim on appeal is that the court
erred in finding that the plaintiff's disclosures were in
meaningful sequence.

The note's disclosures were set out in a disclosure
box.  The first line in this box contained the following
information in separate blocks:  "DATE 08/30/77,"
"FIRST INSTALLMENT DUE DATE 10/04/77,"
"OTHERS SAME DAY OF EACH MONTH,"
"FINAL INSTALLMENT DUE DATE 09/04/80,"
and "INSTALLMENTS FIRST $72.67 OTHERS
$68.00."  On the second line the following appeared,
also in individual blocks: "TOTAL OF PAYMENTS
$2452.67," "FINANCE CHARGE $652.67,"
"AMOUNT FINANCED $1800.00," and "GROUP
CREDITOR INSURANCE CHARGE LIFE $36.97."
The third line showed this information in blocks:
"TOTAL AMOUNT PAYABLE IN 36 MONTHLY
INSTALLMENTS" and "ANNUAL PERCENTAGE
RATE 21.217%."

Following this information, the disclosure box also
contained information and signature lines pertaining
to the option for credit life insurance and a written
cancellation provision.  Other terms and provisions of
the note appeared under the disclosure box and above
the signature and witness lines.

---

[2] The note indicates a finance charge of $652.67.  The penalty of twice
the finance charge imposed by the statute is limited to a maximum of
$1000.  General Statutes § 36-407 (a) (2) (A).

The defendants argue that this sequence of disclosures is not meaningful and does not comply with Connecticut banking regulations § 36-395-5 (a) for two reasons. First, the block on the third line indicating the number of monthly payments is more logically related to, and should be in sequence with, the blocks on the first line disclosing the installment due dates and amounts. Second, they contend that the finance charge and annual percentage rate, disclosed respectively on the second and third lines, are actually disclosures of the same information and should also be in sequence.

In *Allen* v. *Beneficial Finance Co. of Gary, Inc.*, 531 F.2d 797, 801 (7th Cir.), cert. denied, 429 U.S. 885, 97 S. Ct. 237, 50 L. Ed. 2d 166 (1976), the court set up a two-pronged test to deal with the issue of meaningful sequence: A "meaningful sequence first requires groupings of logically related terms. Second, meaningful sequence requires that the terms in these groupings be arranged in a logically sequential order emphasizing the most important terms." See FRB Public Information Letter No. 780 (April 10, 1974), reprinted in 2 Clontz, Truth-In-Lending Manual (4th Ed.), pp. D-325-26.[3]

The court in *Allen* also noted that "[t]he disclosure form is for the borrower and must be presented in a conceptual framework a borrower can easily comprehend. . . . The creditor's convenience . . . provides no justification for a departure from meaningful sequence on a disclosure statement." *Allen* v. *Beneficial Finance Co. of Gary, Inc.*, supra, 804. The requirements of meaningful sequence mandate no one

---

[3] The Federal Reserve Board staff opinions expressed in Public Information Letters, as well as in Official Staff Interpretations, should be given great deference by courts since the United States Supreme Court has held that "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the [TILA or regulations] should be dispositive . . . ." *Ford Motor Credit Co.* v. *Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980).

arrangement, nor that the requirements should unduly burden creditors who sincerely wish to provide customers with understandable disclosure statements. The requirements of meaningful sequence cannot be applied mechanically or rigidly. Clarity of disclosure is what lies at the core of these requirements. Id., 801–802; see *Warren* v. *Credithrift of America, Inc.,* 599 F.2d 829, 832 (7th Cir. 1979); FRB Official Staff Interpretation FC-0054 (March 21, 1977), reprinted in 2 Clontz, Truth-In-Lending Manual (4th Ed.), 1980 Cum. Sup., No. 1, p. C-134; FRB Public Information Letter No. 545 (November 4, 1971), reprinted in 2 Clontz, supra, D-202-203; see FRB Official Staff Interpretation FC-0084 (June 20, 1977), reprinted in 2 Clontz, Cum. Sup., supra, C-146.

Relying on the two-pronged test and the rules set out above, the court in *Allen* found a violation of the meaningful sequence requirement. Its decision was based on more than ten instances in which the disclosure statement failed to set forth the required information in meaningful sequence. For example, the statement contained some figures listed horizontally and others listed in two vertical columns. Groupings of terms were located at random. The columns of numbers appeared to add up when in reality they did not. The same charge was listed twice under two different titles. Terms logically belonging together were scattered across the disclosure statement, and important disclosures were hidden in the context of the statement. *Allen* v. *Beneficial Finance Co. of Gary, Inc.,* supra, 802–803; see discussion in *Basham* v. *Finance America Corporation,* 583 F.2d 918, 926 (7th Cir. 1978), cert. denied, sub nom. *De Jaynes* v. *General Finance Corporation of Illinois,* 439 U.S. 1128, 99 S. Ct. 1046, 59 L. Ed. 2d 89 (1979). Another case in which there was a violation because of numerous instances of failure to disclose in mean-

ingful sequence is *Barber* v. *Kimbrell's, Inc.,* 424 F. Sup. 42, 49–50 (W.D. N.C. 1976), aff'd in part, rev'd in part, 577 F.2d 216 (4th Cir.), cert. denied, 439 U.S. 934, 99 S. Ct. 329, 58 L. Ed. 2d 330 (1978).

In *Basham* v. *Finance America Corporation,* supra, the same court that decided *Allen* v. *Beneficial Finance Co. of Gary, Inc.,* supra, considered the debtor's complaint that the disclosure statement violated the meaningful sequence requirement because it disclosed figures horizontally and in a subtractive form. The court decided that meaningful sequence existed. It noted that subsequent to the *Allen* decision, the Federal Reserve Board staff expressed an opinion commenting on *Allen* that no particular form of statement was required, so long as the relationship among the terms was evident, thereby providing the consumer with a clear and adequate basis on which to shop for credit. *Basham* v. *Finance America Corporation,* supra, 926 n.13, citing FRB Staff Opinion Letter No. 1047 (May 20, 1976), reprinted in 2 Clontz, Cum. Sup., supra, D-13. The court in *Basham* also noted that meaningful sequence is required "to insure that the disclosures follow a logical order and are not scattered throughout the agreement." Id., 926.

The sequence of disclosures upheld as meaningful by the *Basham* court is similar to the sequence of disclosures being considered in this case. "[T]he subtractional disclosure [was] a . . . sequential series of disclosures beginning with the total amount of required payments, the finance charge, the amount financed, the charges for credit life, and credit disability insurance, the total number of payments and the annual percentage rate." Id., 927. Except for credit disability insurance not involved in the present case, the sequence of the quoted items is identical to lines two and three of the disclosure box now under consideration.

In *Warren* v. *Credithrift of America, Inc.*, supra, the debtor argued that disclosures were not in meaningful sequence because they were listed horizontally and because logically related terms were not grouped together. The debtor contended that an alternative arrangement would be more meaningful and promote greater understanding of the transaction. The court was not convinced by this argument and found meaningful sequence in the order printed. It stated that "[a]lthough the form in question may not provide disclosure in a sequence that optimizes clarity we conclude that [the creditor] has provided [the debtor] with a disclosure statement that is sufficiently understandable to meet the requirements of [the TILA regulations]." Id., 832; see *Lamar* v. *American Finance System of Fulton County, Inc.*, 577 F.2d 953, 954 (5th Cir.), reh. denied, 584 F.2d 389 (5th Cir. 1978).

"Given the wide variety in credit transactions, 'meaningful sequence' must be determined by reference to the particular set of disclosures under consideration." FRB Official Staff Interpretation No. FC-0054, supra. In the present case, the disclosure statement is similar to the forms approved in the *Basham* and *Warren* cases and unlike the disclosure statement rejected in the *Allen* decision. The conclusion of the trial court that "[t]he plaintiff has made all the required disclosures in a meaningful sequence" must be sustained.

The second issue deals with an alleged violation of that portion of the Connecticut banking regulations which provides: "[W]here the terms 'finance charge' and 'annual percentage rate' are required to be used, they shall be printed more conspicuously than other terminology required by these regulations . . . ." Regs., Conn. State Agencies § 36-395-5 (a). In the case before the court, the terms "finance charge" and "annual percentage rate" are required to be disclosed, and the plaintiff attempted to comply with this regula-

tion by blocking these terms with thick, shaded borders. The trial court found that this mode of conspicuousness complied with the regulation. The defendants claim that there is no latitude in conspicuity, but that these terms must be printed in larger type than all other disclosures. Therefore, it is their contention that these disclosures cannot be set off in any other manner to render them conspicuous.

In *Powers* v. *Sims & Levin Realtors,* 396 F.Sup. 12, 27 (E.D. Va. 1975), aff'd in part, rev'd in part, 542 F.2d 1216 (4th Cir. 1976), the creditor disclosed the relevant terms as follows:

### "DISCLOSURE STATEMENT OF LOAN

Amount of Loan:

Amount Financed:

>    Amount of Loan

>    Less Brokerage

Total Amount Financed:

FINANCE CHARGES:

| | |
|---|---|
| INTEREST | $2,093.15 |
| BROKERAGE | 250.00 |
| TOTAL FINANCE CHARGES: | $2,343.15 |

ANNUAL PERCENTAGE RATE:   12%

Other Charges:

>    Title examination & title insurance
>    Legal fee For Deed of Trust & Note
>    Cost of recording Deed of Trust
>    Legal fee for Disclosure Statement

Total Other Charges:"

The court in that case found a violation of the pertinent regulation because "the [creditor] failed to print the terms 'finance charge' and 'annual percentage

rate' in print more conspicuous than that used for any other disclosures . . . ." Id., 19. If the creditor in the *Powers* case had printed in capital letters only the terms required to be conspicuous, there would have been compliance with the regulatory requirement. FRB Official Staff Interpretation FC-0001 (August 31, 1976), reprinted in 2 Clontz, Cum. Sup., supra, C-114; FRB Public Information Letter No. 1132 (November 22, 1976), reprinted in 2 Clontz, Cum. Sup., supra, D-43-44.

In *Frank* v. *Reserve Consumer Discount Co.,* 398 F. Sup. 703 (W.D. Pa. 1975), the court considered a disclosure statement in which the terms "finance charge" and "annual percentage rate" were of a darker print and enclosed in darker blocks than other terms in the statement. Also, in *Bussey* v. *Georgia Bank Americard,* 516 F.2d 452 (5th Cir. 1975), reh. denied, 521 F.2d 814, a yellow background was used to offset these terms and the itemized portions of the "finance charge," in contrast to a blue background for the remaining required disclosures. In each case the court found these terms in compliance with the regulation as to conspicuity.

Staff opinions of the Federal Reserve Board hold that asterisks blocking off terms may be used to meet the "more conspicuous" requirement in computer-generated printing incapable of other than one-type size of print. FRB Official Staff Interpretation FC-0011 (October 26, 1976), reprinted in 2 Clontz, Cum. Sup., supra, C-117-18; FRB Public Information Letter No. 602 (May 16, 1972), reprinted in 2 Clontz, supra, D-228.

It is clear from the cases and opinions cited that the terms "finance charge" and "annual percentage rate" may be more conspicuously printed in ways other than larger type. A more appropriate standard is whether "the terms . . . stand out from the other

disclosures and quite definitely catch the eye." *Grey* v. *Eurpoean Health Spas, Inc.,* 428 F. Sup. 841, 844 (D. Conn. 1977). Speaking of another TILA disclosure requirement, the court held in *Reed* v. *Washington Trailer Sales, Inc.,* 393 F. Sup. 886, 892 (M.D. Tenn. 1974), that " 'conspicuously' . . . is to be gauged from the context of the required statement rather than determined on the basis of a stringent standard."

After reviewing the disclosure statement in this case, we hold that by thick, shaded borders of the blocks labeled "FINANCE CHARGE" and "ANNUAL PERCENTAGE RATE," these terms are printed more conspicuously than other terminology, as required by § 36-395-5 (a) of the Connecticut banking regulations.

The defendants' third issue arises from their voluntary purchase of credit life insurance. The premium for this credit life insurance was disclosed in a block labeled "GROUP CREDITOR INSURANCE CHARGE LIFE" and was paid from the principal amount of the loan borrowed by the defendants. The principal amount of the loan was disclosed in a block labeled "AMOUNT FINANCED." In order to determine the net amount of the loan to be advanced to the borrower, it was necessary to subtract the cost of the credit life insurance from the amount loaned or financed. Several sentences printed directly below the three lines of disclosures and within the outline of the disclosure box explained the operation required to compute the net amount of the loan to the borrower. The trial court found that this was a proper and complete disclosure.

The defendants argue on appeal that § 36-395-7 (d) (1) of the Connecticut banking regulations requires that the disclosure of the "amount financed" should be itemized as to the cost of the credit life insurance and

the net amount of the loan advanced to the borrower so that it would be clear to a debtor, without reading the disclosure explanation, that the cost of the credit life insurance was paid from the "amount financed."

Section 36-395-7 (d) (1) of the Connecticut banking regulations provides in part that the "amount of credit . . . which will be paid to the customer . . . , including all charges, individually itemized, which are included in the amount of credit extended . . . [shall be disclosed] using the term 'amount financed.' " The issue is whether the disclosure of the premium for credit life insurance in the block adjoining the disclosure of the "amount financed," as was done in this case, complies with this regulation that such charges be individually itemized.

It is clear from the cases and FRB staff opinions that have considered this issue that the regulations nowhere require, either expressly or by implication, the use of such terms as "net proceeds to borrower" or "net cash to borrower" in an itemization of the "amount financed." The term "amount financed" needs to indicate to the customer only the total amount of credit which will be made available to him. *Warren* v. *Credithrift of America, Inc.,* supra, 831 n.2; *Pollock* v. *General Finance Corporation,* 535 F.2d 295, 298 (5th Cir. 1976), aff'd on reh., 552 F.2d 1142 (5th Cir.), cert. denied, 434 U.S. 891, 98 S. Ct. 265, 54 L. Ed. 2d 176 (1977); FRB Public Information Letter No. 1162 (March 14, 1977), reprinted in 2 Clontz, Cum. Sup., supra, D-53-54; FRB Public Information Letter No. 1123 (October 29, 1976), reprinted id., D-40-41; FRB Public Information Letter No. 982 (December 24, 1975), reprinted in 2 Clontz, supra, D-413; see FRB Official Staff Interpretation FC-0114 (September 13, 1977), reprinted in 2 Clontz, Cum. Sup., supra, C-158. The disclosure statement in this case, therefore, complies with the Connecticut banking regulations.

This court makes the following observation not relevant to the issues raised in this case. General Statutes § 36-406 (a) provides: "Any creditor . . . shall disclose each of the following items . . . : (1) *The amount of credit of which the obligor will have the actual use, or which is or will be paid to him* . . . ; (2) all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge; (3) the total amount to be financed, that is, the sum of the amounts referred to in subdivision (1) and the amounts referred to in subdivision (2) . . . ." (Emphasis added.) The language in this portion of the statute is identical to its federal counterpart. See 15 U.S.C. § 1639 (a) (1) (2) and (3).

Section 36-395-7 (d) (1) of the Connecticut banking regulations, discussed above, incorporates this language of General Statutes § 36-406 (a) except for the portion of subdivision (1) which requires a disclosure of "[t]he amount of credit of which the obligor will have the actual use . . . ." This regulation is again identical to its federal counterpart. Regulation Z, 12 CFR § 226.8 (d) (1).

In this case there seems to be a technical violation of General Statutes § 36-406 (a) (1), but a compliance with the related rule in § 36-395-7 (d) (1) of the Connecticut banking regulations. When such an inconsistency exists, the creditor may raise as a good defense General Statutes § 36-407 (f).[4] See *Smith* v. *No. 2 Galesburg Crown Finance Corporation,* 615 F.2d 407, 411–13 (7th Cir. 1980); *Warren* v. *Credithrift of America, Inc.,* supra, 831; *Basham* v.

---

[4] General Statutes § 36-407 (f), which is identical in purpose to the federal TILA; 15 U.S.C. § 1640 (f); provides in its relevant part: "No provision . . . imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof . . . ."

*Finance America Corporation,* supra, 922–23; *Pollock* v. *General Finance Corporation,* supra.

There is no error.

In this opinion SHEA and DALY, Js., concurred.