Christine Anne LUCAS, Plaintiff,

v.

**PARK CHRYSLER PLYMOUTH, INC.,**
**Defendant.**

No. 74 C 320.

United States District Court,
N. D. Illinois.

March 6, 1974.

Joseph S. Holtzman, Cook County Legal Assistance Foundation, Inc., Brookfield, Ill., for plaintiff.

Berkson, Gorov & Levin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

BAUER, District Judge.

This cause comes on the defendant's motion to strike and dismiss the instant complaint.

This is an action seeking statutory damages, attorneys fees and other relief as the court deems just and equitable for the alleged violation of the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq.; Federal Reserve Regulation Z, 12 C.F.R. § 226; The Illinois Retail Installment Act, Chapter 121½ § 505 of the Illinois Revised Statutes; the Illinois Motor Vehicle Installment Act, Chapter 121½ § 565 of the Illinois Revised Statutes; Illinois Consumer Fraud Act, Chapter 121½ § 262 of the Illinois Revised Statutes; and the Uniform Commercial Code, Chapter 26 § 2–314 and § 2–315 of the Illinois Revised Statutes. The jurisdiction of this Court is allegedly based on Section 130(e) of the Federal Truth in Lending Act, and 28 U.S.C. § 1337.

The plaintiff Christine Anne Lucas is an adult citizen of the United States residing in La Grange, Illinois. The defendant Park Chrysler Plymouth Inc. is an Illinois corporation engaged in the business of selling automobiles at Chicago, Illinois.

The plaintiff, in the complaint, alleges the following facts, *inter alia*:

1. The defendant, in the ordinary course of business, regularly extended, offered to extend, arranged or offered to arrange the extension of credit to its customers which is payable in more than four installments and for which a finance charge is or may be imposed.

2. On or about September 9, 1973, plaintiff entered into a sales contract with defendant for the purchase of a used 1971 Toyota automobile for a total sales price of. $2,910.00. Plaintiff paid $50.00 cash and was given a $600.00 trade-in allowance leaving an unpaid balance of $2,260.00. Bill of sale is attached to the complaint as Exhibit A. Plaintiff was orally offered three years credit terms by defendant's agent, Mel, a salesman. However the Bill of Sale (Exhibit A) provided a single payment of the entire balance. On or about October 26, 1973, plaintiff signed a second Bill of Sale which is Exhibit B attached to the complaint, for the same purchase because plaintiff had sold the automobile which was going to be traded in. Plaintiff paid an additional $560.00 in cash and took possession of the automobile.

3. Plaintiff was again offered three years credit terms by defendant's agent, Mel, a salesman. Yet again the Bill of Sale provides for a single payment of the balance of $2300.00. Immediately after leaving defendant's place of business on October 26, the automobile began to malfunction. It would not go over 30 miles per hour and generally ran poorly. On or about October 26 plaintiff called defendant and asked for her money back because the automobile wouldn't run. Defendant refused and said they would fix the car. Plaintiff's car remained at defendant's service department from on or about October 28, 1973 to on or about December 31, 1973 with plaintiff paying nothing to defendant during this period. On or about December 29, 1973, plaintiff was notified by her parents that a Summons and Complaint for the entire balance due on the car of $2300.00 had been left with them by the Sheriff of Cook County, even though her parents had told the Sheriff's deputy that plaintiff no longer resided there. Defendant was sueing plaintiff in the Circuit Court of Cook County based on the second Bill of Sale, which is Exhibit B to the complaint, a copy of the Summons and Complaint in that case are at-

tached as Exhibit C to the complaint.

4. On or about December 31, 1973 plaintiff went to see defendant regarding the abovementioned lawsuit. In return for defendant's promise to drop the lawsuit against her plaintiff paid defendant an additional $200.00. A third Bill of Sale was prepared reflecting an unpaid balance of $2130.00 payable in installments over a two year period rather than the three years as originally offered. A copy of the Bill of Sale is attached to the complaint as Exhibit D. Plaintiff did not sign this third Bill of Sale but signed a blank Retail Installment Contract in two places as required by defendant. Plaintiff did not have an opportunity to read the contract prior to signing being assured by defendant that the terms would be the same as the Bill of Sale. None of the terms were explained to plaintiff nor was plaintiff given a copy of the Retail Installment Contract, either blank or completed. A copy of the Retail Installment Contract, obtained by plaintiff from defendant on January 12, 1974 upon advice of counsel, is attached to the complaint as Exhibit E. On or about December 31, 1973, plaintiff regained possession of the car. It broke down immediately. Defendant supplied a new battery but the car still did not run. On or about January 2, 1974 defendant towed the car it its service department where it remains. On or about January 11, 1974 plaintiff, through her attorney, demanded rescission of the contract and a return of her money, a sum of $810.00. Defendant, through its agent, the Sales Manager, refused.

5. In the course of this transaction the defendant violated the provisions of Section 121 of the Federal Truth in Lending Act, 15 U.S. C. § 1631, and Section 226.8 of Regulation Z, in the following respect:

a. by failing to disclose the amount of the charge for Credit Life Insurance, which was included in the amount of credit extended but is not part of the finance charge as required by section 128(a)(4) of the Act, 15 U.S.C. § 1638(a)(4); and Section 226.-8(c)(4) of Regulation Z;

b. by failing to disclose the amount of the finance charge as required by Section 128(a)(b) of the Act, 15 U.S. C. § 163 [1638](a)(b) and Section 226.8(c)(8) of Regulation Z;

c. by failing to disclose the annual percentage rate of the finance charge as required by Section 128(a)(7) of the Act, 15 U.S.C. § 1638(a)(7), and Section 226.8(b)(2) of Regulation Z;

d. by failing to disclose the "cash price", "cash downpayment", "trade-in", "total downpayment", "unpaid balance of cash price", "amount financed", or "deferred payment price" by that precise terminology required by Section 128(a)(1)(10) of the Act, 15 U.S.C. § 1638(a)(1)(10) and Section 226.8(c)(1)–(8) of Regulation Z;

e. by failing to make all of the disclosures required by the Act before the transaction was consumated as required by Section 226.8(a) of Regulation Z;

f. by failing to furnish plaintiff with a duplicate of the instrument containing the required

disclosure at the time the disclosures were to be made, as required by Section 226.8(a) of Regulation Z; and

g. by retaining or authorizing a security interest in the 1971 Toyota of the plaintiff, without describing or identifying the type of any security interest retained or clearly identifying the ·property to which the security interest relates as required by Section [128](a) (10) of the Act, 15 U.S.C. 1638(a)(10), and Section 226.-8(b)(5) of Regulation Z.

As a result of the aforesaid violations of the Truth in Lending Act, the defendant is liable to plaintiff in the sum of $691.74 as the amount equivalent to double the finance charge plus costs and attorney fees as provided by Section 130(a), 15 U.S.C. § 1640(a).

6. In the course of this transaction the defendant violated the provisions of the Illinois Retail Installment Act, S.H.A. Ch. 121½ § 505 in the following respect:

a. by failing to disclose the amount of the charge for Credit Life Insurance which was included in the amount of credit entered but is not part of the finance charge as required by S.H.A. Ch. 121½ § 505(4);

b. by failing to disclose the amount of the finance charge as required by S.H.A. Ch. 121½ § 505(8);

c. by failing to disclose the annual percentage rate of the finance charge as required by S.H.A. Ch. 121½ § 505(10);

d. by failing to complete the retail installment contract as to all essential provisions before it was signed by plaintiff as required by S.H.A. Ch. 121½ § 503(a);

e. by failing to deliver to plaintiff a copy of the retail installment contract signed by defendant as required by S.H. A. Ch. 121½ § 514.

As a result of the aforesaid violations of the Illinois Retail Installment Sales Act the defendant is precluded from collecting the finance charge of $345.-87 pursuant to S.H.A. Ch. 121½ § 531.

7. In the course of this transaction the defendant violated the provisions of the Illinois Motor Vehicle Installment Act, S.H.A. Ch. 121½ § 565 in the following respects:

a. by failing to disclose the amount of the charge for Credit Life Insurance which was included in the amount of credit extended but is not part of the finance charge as required by S.H.A. Ch. 121½ § 565(4);

b. by failing to disclose the amount of the finance charge as required by S.H.A. Ch. 121½ § 565(a)[8];

c. by failing to disclose the annual percentage rate of the finance charge as required by S.H.A. Ch. 121½ § 565(10);

d. by failing to complete the retail installment contract as to all essential provisions before it was signed by plaintiff as required by S.H.A. Ch. 121½ § 563(a);

e. by failing to deliver to plaintiff a copy of the retail installment contract signed by defendant as required by S.H. A. Ch. 121½ § 573.

As a result of the aforesaid violation of the Illinois Motor Vehicle Retail Installment Sales Act the defendant is precluded from collecting the finance charge of $345.87 pursuant to S.H.A. Ch. 121½ § 584.

8. In the course of this transaction the defendant committed unlawful practice in violation of the Illinois Consumer Fraud Act S.H.A. Ch. 121½ § 262 in the following respects:

   a. by promising plaintiff three years credit terms, a promise upon which plaintiff relied, then suing plaintiff for the entire unpaid balance based on provision in the Bill of Sale (Exhibit B) commonly known as a "one-note" which plaintiff had been told to disregard;

   b. by promising plaintiff three year credit terms a promise upon which plaintiff relied, then finally only providing two year terms even though defendant had knowledge that plaintiff was then unemployed and could not afford the payments;

   c. by concealing the amount of the finance charge and other charges in order to hide from plaintiff the total cost of the automobile.

These violations were wilfully committed with malicious intent as evidenced by defendant's use of plaintiff's parents' address for legal notice even though defendant was aware that plaintiff was no longer living with her parents. These wilfull violations have caused extreme emotional distress and mental anguish to be suffered by plaintiff for which she prays for damages; compensatory and punitive.

9. The automobile subject to the transaction in these causes has never run properly despite defendant's attempts to repair it. The fifth cause of action is brought by plaintiff against defendant for breach of the implied warranties pursuant to the Uniform Commercial Code, Ch. 26 §§ 2–314 and 2–315 of the Illinois Revised Statutes. The automobile was purchased by plaintiff transportation and plaintiff relied on defendant's expertise to select a suitable vehicle for such purpose. Since the automobile does not run, defendant has breached both the implied warranty of merchantability, Ch. 26 § 2–314 and the implied warranty of fitness particular purpose, Ch. 26 § 2–315 of the Illinois Revised Statutes.

The defendant, in support of its motion to strike and dismiss the instant complaint contends, in *haec verba*:

"1. [That] [f]or her first cause of action the Plaintiff alleges certain transactions which took place on September 9, 1973 and October 26, 1973, were credit transactions, whereas Exhibits A and B to the Complaint filed herein acknowledged that the sales in question were cash sales providing for one single payment of the balance due as acknowledged by the Plaintiff in her signature to Exhibits A and B thereby taking said transactions outside of any Federal Statutes or Regulations.

2. That Exhibit E, the allegedly complaint of retail installment contract acknowledges receipt thereof and the copies thereof obviating any of the claimed violations of Federal Statutes or Regulations.

3. That the first cause of action is a spurious attempt to invoke the jurisdiction of this Court wherein the major allegations as contained in the second, third, fourth and fifth causes of action are based on Illinois Statutes and that jurisdiction in this matter specifically lies within the Courts of Illinois.

4. That the fourth cause of action is without foundation in law and appears to be an action for abusive process without pleading any damages therefrom since the Complaint acknowledges that such action, if any, did not proceed further."

It is the opinion of this Court that the defendant's motion is without merit.

In the past, Common Law pleading was the mill of justice in which an undefined, obscure mass of facts was ground down to clear and distinct issues. Presently under Rule 8 of the Federal Rules of Civil Procedure all that is required of the complaint is a short and plain statement of the claim showing that the plaintiff is entitled to relief. The function of a complaint is to give fair notice of the claim asserted by the plaintiff so as to enable the defendants to answer and prepare for trial, to allow for the application of the doctrine of *res judicata,* and to show the type of case brought. It is immaterial whether the complaint states conclusions or facts or has relevant exhibits attached as long as fair notice is given and the statement of the claim is short and plain. Samsing v. S & P Company, 325 F.2d 718 (9th Cir. 1963); Arthur H. Richland Co. v. Harper, 302 F.2d 324 (5th Cir. 1962); Karlinsky v. New York Racing Association, 52 F.R.D. 40 (S.D.N.Y.1971).

While the instant complaint is not a masterpiece in pleadings, under the Federal Rules of Civil Procedure artfully drawn pleadings are not required. Since all pleadings should be construed as to do substantial justice, it is clear from a careful reading of the instant complaint that the plaintiff's statement of a claim sufficiently satisfies the requirements of Rule 8.

Under Rule 12(b) of the Federal Rules of Civil Procedure a complaint should not be dismissed for insufficiency unless it appears to a certainty that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the complaint. Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968); United States v. Crown Zellerbach Corp., 141 F.Supp. 118 (N.D.Ill. 1956).

It is clear that the plaintiff in her first cause of action has adequately stated a cause of action against the defendant under the federal Truth in Lending Act. See Stefanski v. Mainway Budget Plan, Inc., 456 F.2d 211 (5th Cir. 1972); Jordan v. Montgomery Ward & Co., 442 F.2d 78 (8th Cir. 1971), cert. denied 404 U.S. 870, 92 S.Ct. 78, 30 L.Ed.2d 114; Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307 (E. D.Mo.1971). Although plaintiff conceivably could have drafted her complaint with greater adroitness and detail, her failure to do so is not inconsistent with the spirit of the modern rules of procedure that are designed to reduce complexity in pleading yet increase the pretrial knowledge of the litigants concerning the positions of their opponents through liberal pre-trial discovery. The plaintiff has clearly put the defendant on notice of the nature of her claims and the instant motion should be denied. This ruling should not be interpreted as barring the parties from bringing any pre-trial motion which they may deem appropriate.

Accordingly, it is hereby ordered that the defendant's motion to strike and dismiss is denied.