David J. BASHAM, Linda C. Basham, Gregory D. Vogelsang and Donna I. Vogelsang, Plaintiffs-Appellants,

v.

FINANCE AMERICA CORPORATION, Defendant-Appellee.*

Nos. 77–2029 through 77–2032, 77–2179, 77–2180, 78–1058 through 78–1069 and 78–1198.

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1978.

Decided Aug. 16, 1978.

Rehearing Denied in Nos. 77–2029 and 77–2030 Sept. 21, 1978.

Rehearing and Rehearing In Banc Denied in No. 77–2031 Oct. 24, 1978.

---

* Consolidated with the following:

*Childs v. First National Bank of Peoria,* 77–2031; *Steele v. Thorp Credit, Inc. of Illinois,* 77–2032; *Sholl v. General Finance Corp. of Illinois,* 77–2032; *Dorethy v. Bushnell Finance Co.,* 78–1060; *Rounds v. Household Finance Corp.,* 78–1061; *Brasche v. General Finance Corp. of Illinois,* 78–1062; *Rounds v. General Finance Corp. of Illinois,* 78–1063; *Sharp v. General Finance Corp. of Illinois,* 78–1064; *Corbin v. General Finance Corp. of Illinois,* 78–1065; *Tibbits v. General Finance Corp. of Illinois,* 78–1066; *DeJaynes v. General Finance Corp. of Illinois,* 78–1067; *Brown v. General Finance Corp. of Illinois,* 78–1068; *Johnson v. Mid America Credit, Inc.,* 78–1069; *Sharp v. First National Bank of Peoria,* 77–2179; *Fort Madison Bank & Trust Co. v. Collins, Collins v. Hart Mobile Homes, Inc.,* 77–2180; *In re William Ernest Anderson; Appeal of William Ernest Anderson,* 78–1058; *Hawk v. General Finance Corp. of Illinois,* 78–1198.

Barry M. Barash, Galesburg, Ill., for plaintiffs-appellants.

William T. Kirby, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, SPRECHER and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

This case is a consolidation of nineteen Truth in Lending actions which were either dismissed or upon which summary judgment was granted for defendants. Numerous issues are raised, the primary ones being the liability of creditors when disclosures are made in conformity with Federal Reserve Board ("Board") regulations, official staff interpretations or unofficial staff letters; the extent of required disclosure by a creditor of a security interest in after-acquired property; the compliance of various loan forms with the requirement that the disclosures therein be made clearly, conspicuously and in meaningful sequence; and whether the one-year statute of limitations on Truth in Lending actions applies to counterclaims filed by a debtor in response to a secured creditor's claim or a claim for reclamation.

I

These appeals arise out of alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., the regulations promulgated thereto ("Regulation Z"), 12 C.F.R., part 226, the Illinois Uniform Commercial Code ("UCC"), Illinois Revised Statutes 1975, chapter 26, §§ 1–101, et seq., and the Illinois Consumer Fraud Act, Illinois Revised Statutes 1975, chapter 121½, §§ 261, et seq.

All of the creditors and the transactions described in the complaints are subject to regulation under TILA, Regulation Z, the Uniform Commercial Code and the Consumer Fraud Act. All of the transactions were consumer credit transactions within the meaning of 15 U.S.C. § 1602(h), in that the party to whom credit was offered or extended was a natural person, and the money, property, or services which were the subject of the transaction were primarily for personal, family, household, or agricultural purposes. All but one of the nineteen

appeals involve close-end consumer loans under 15 U.S.C. § 1639.[1]

All of these cases were decided adversely to plaintiffs upon motions to dismiss or motions for summary judgment and therefore turn almost entirely on the resolution of questions of law involving construction of the statute, regulations and loan documents. For this reason, combined with the fact that most of the legal issues involve more than one case, the facts of individual cases will be discussed only where necessary to resolve an issue or where differing facts would dictate a different result. Otherwise, in the interest of brevity, only a general description of the transaction involved will be given.

## II

■ Plaintiffs' first claim[2] is that defendants failed to disclose "[t]he amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf" in violation of 15 U.S.C. § 1639(a).[3] This section of the statute requires that a creditor disclose that amount designated by the above quotation in addi-tion to all charges for insurance or other purposes, individually itemized. Finally, these two figures must be added together and disclosed to determine the total amount financed.

■ Defendants do not deny that they failed to disclose the amount required by § 1639(a)(1). Rather, they contend that their disclosure forms, which only included the individual itemized charges and the total amount financed, were in full compliance with the Board's Regulation Z § 226.-8(d)(1), 12 C.F.R. § 226.8(d)(1), which requires disclosure of:

> The amount of credit, . . . which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

A careful reading of this portion of Regulation Z indicates that it requires only the disclosures spelled out in §§ 1639(a)(2) and (a)(3) of the TILA, which defendants here gave, thereby implicitly allowing the actual proceeds of the loan to remain undisclosed.[4]

1. One of the appeals, *Fort Madison Bank and Trust Co. v. Collins,* (No. 77–2180) is a sale by a mobile home dealer under 15 U.S.C. § 1638. The contract in the *Fort Madison Bank* case was immediately assigned by the dealer to the bank in a typical dealer-paper transaction. No appeal here involves the extension of "open-end" credit under 15 U.S.C. § 1637.

2. The twelve cases involving this claim are 78–1059 through 78–1069 and 78–1198. Plaintiffs also argue that cases 77–2029 and 77–2030 involve this claim. A perusal of the record indicates that the original complaints raised only the issue of an improper security interest on the part of defendants in these latter cases. While a motion to amend the complaint in each case was filed, these motions, according to the docket sheet, were withdrawn by plaintiffs on September 2, 1977. Therefore, this issue was neither raised nor ruled upon in the district court and is therefore not before us on appeal in those two cases. For the same reason, plaintiffs' additional claim in 77–2030 that credit life insurance charges were not disclosed is not before us.

 Plaintiffs also argue that 78–1058 involves this issue. That case, however, was decided solely on a statute of limitations question and this is the only issue before us on appeal of that case. *See* Part V *infra.*

3. 15 U.S.C. § 1639(a) provides in relevant part:

 (a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

 (1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

 (2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

 (3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

4. This conclusion is also reached in *Pollock v. General Finance Corp.,* 535 F.2d 295, 298–99 (5th Cir. 1976), *aff'd on rehearing,* 552 F.2d 1142, 1143–44 (5th Cir. 1977), *cert. denied,* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977). It is to be noted, however, that the simple

Assuming, without deciding, that defendants must comply with the statute even where it differs from the Board's regulations,[5] it is clear that failure to disclose the actual proceeds of the loan violates § 1639(a)(1) of the TILA. Thus we are presented with a situation, accounted for by Congress in 15 U.S.C. § 1640(f), where action in good faith conformity with Regulation Z is found violative of the TILA:

No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or

approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

Since defendants' disclosures have followed the requirements of Regulation Z[6] no civil liability may be imposed upon them according to § 1640(f) for having failed to make the disclosure required by § 1639(a)(1). Therefore, the district court properly concluded that no claims existed on this basis.[7]

### III

Plaintiffs claim that defendants' loan documents attempt to grant the creditor an overbroad and unlawful security interest in the debtors' after-acquired consumer goods.[8] A creditor desiring to hold a security interest must make the following disclosure under 15 U.S.C. § 1639(a)(8):

A description of any security interest held or to be retained or acquired by the

---

arithmetical procedure of subtraction will yield the "undisclosed" figure.

**5.** Defendants argue that the Board has authority under 15 U.S.C. § 1604 to provide for variations and exceptions to the statute such as that involved here. While we need not decide that issue in this case, we note that a similar argument was rejected in *Pollock v. General Finance Corp.*, 552 F.2d 1142, 1143–44 (5th Cir. 1977), *cert. denied*, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977). Defendants also claim that Congress has acquiesced in the Board's construction of the statute in this manner since 1969 and therefore this construction must be given weight. *See generally Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 313, 53 S.Ct. 350, 77 L.Ed. 512 (1933); *Zemel v. Rusk*, 381 U.S. 1, 11, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). Given our disposition of the broader issue of liability, we need not address this argument.

**6.** *See also* Federal Reserve Board Letter No. 982 (December 24, 1975) CCH Consumer Credit Guide ¶ 31,321, to the effect that loan proceeds need not be disclosed. The statute itself mandates that disclosures be "in accordance with the regulations of the Board." 15 U.S.C. § 1631(a).

**7.** Section 1640(f) limits its exemption from liability to "good faith" conformity to regulations and interpretations. We do not reach the issue of whether continued adherence by the creditors to their present form of disclosure after at

least one circuit has ruled that it is illegal vitiates their "good faith." *See Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976), *aff'd on rehearing*, 552 F.2d 1142 (7th Cir. 1977), *cert. denied*, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977).

Nor do we decide whether mere coincidental conformity with the Board's regulations is sufficient for exculpation under § 1640(f). *See Jones v. Community Loan & Inv. Corp.*, 544 F.2d 1228, 1231–32 (5th Cir. 1976), *cert. denied*, 431 U.S. 934, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). The regulation relied upon here became effective on July 1, 1969, the same day as the TILA, and has never been amended. Reliance on this regulation as initial and continuous guidance in complying with the statute is apparent from the disclosure forms used by defendants.

Finally, in No. 78–1198, the issue of whether a TILA claim passes to the wage earner trustee in a Chapter XIII bankruptcy proceeding is argued. In light of our conclusion that no civil liability exists here, we do not decide that issue. *See also Matter of Dickson*, 432 F.Supp. 752 (W.D.N.C.1977).

**8.** This issue involves appeals 77–2029 through 77–2032. Plaintiffs claim that 77–2180 is also involved. A perusal of the record indicates that 77–2180 was decided solely on a statute of limitations question and is therefore the issue of a security interest and that case is not before us on appeal. *See* Part V *infra*.

creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

Regulation Z, § 226.8(b)(5), 12 C.F.R. § 226.-8(b)(5) requires:

A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

▪ The legal extent of a security interest is determined according to state law and section 9–204(2) of the Illinois Uniform Commercial Code (UCC) Ill.Rev.Stat. ch. 26, § 1–101 *et seq.*, provides in relevant part:

No security interest attaches under an after-acquired property clause to consumer goods other than accessions (Section 9–314) when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value.

Therefore, plaintiffs argue that defendants violated section 1639(a)(8) of the TILA and section 226.8(b)(5) of Regulation Z by claiming to cover more than UCC section 9–204(2) allows and by failing to disclose the time limitation imposed on such clauses by this section of the UCC.

The leading case in this circuit on the after-acquired property security interest is *Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815 (7th Cir. 1976). There this court held that disclosures of security interests that fail to indicate state law limitations on such security interests do not fulfill the disclosure requirements of the TILA and Regulation Z. In particular, debtors' security interest there covered more property than allowed by the statute and also did not disclose that any security interest was limited to property acquired within 10 days after the secured party gives value.

▪ The security interest clauses in three of the four cases involved here do not contain any reference to a time limitation.[9] This failure to indicate this limitation on the security interest violates the TILA and Regulation Z under our holding in *Tinsman. See also Pollock v. General Finance Corp.,* 535 F.2d 295, 300 (5th Cir. 1976), *aff'd on rehearing,* 552 F.2d 1142, 1144–45 (5th Cir. 1977), *cert. denied,* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977); *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1122–23 (S.D.Ill.1974).

**9.** Nos. 77–2029, 77–2030 and 77–2031. No. 77–2031 also appears to improperly claim an interest in more than merely accessions. The security agreement states flatly that it "will cover after acquired property," no limitation of the kind of property covered being given. Defendants argue that they have in good faith relied on Exhibit E of the Model Forms provided with a pamphlet entitled, "What You Ought to Know About Truth in Lending" and therefore should be immune from liability under 15

U.S.C. § 1640(f). These forms, however, are merely samples "solely for purposes of demonstration" as the disclaimer at the bottom of the form states. *See Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1123 (S.D.Ill. 1974); *Bone v. Hibernia Bank,* 354 F.Supp. 310, 311 (N.D.Cal.1973), *reversed on other grounds,* 493 F.2d 135 (9th Cir. 1974). Reliance on such a form, where it is contrary to the law of the jurisdiction, is not sufficient to insulate defendants from liability under § 1640(f).

Defendants, however, claim reliance on unofficial staff opinions of the Board for the contention that the disclosure here was made in good faith reliance upon Board interpretations of the TILA and therefore subject to no civil liability under section 1640(f). *See* Federal Reserve Letters Nos. 829, 983 and 1053, CCH Consumer Credit Guide ¶¶ 31,151, 31,323, and 31,393.[10] This ignores the fact that these unofficial staff opinion letters are explicitly excepted from reliance under Regulation Z, section 226.-1(d)(4)(iii). The latest interpretation from the Board, post-dating the staff letters relied on by defendants, is an Official Staff Interpretation which concludes that the statement that a creditor holds "a security interest under the Uniform Commercial Code" is a sufficient description when the creditor obtains a security interest under the UCC. *See* Federal Reserve Board Official Staff Interpretation (November 19, 1976), CCH Consumer Credit Guide ¶ 31,491. Without deciding whether this Official Staff Interpretation is consistent with *Tinsman,* we note that defendants cannot rely on this Official Interpretation since the language in their disclosure forms makes no mention of the UCC.

In holding that defendants cannot rely on the unofficial staff letters under the facts of this case, we realize that such letters are an important informative function of the staff of the Board which, although not binding on a court, are entitled to deference and may prove helpful to a decision in a given case. *Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971, 976–77 (5th Cir. 1974); *Frank v. Reserve Consumer Discount Co.,* 398 F.Supp. 703 (D.Pa.1975). In the instant cases, however, the disclosure forms give a clearly mistaken impression of the extent of time the security interest may

be in effect. As we stated in *Tinsman v. Moline Beneficial Finance Company,* 531 F.2d 815, 818 (7th Cir. 1976):

> A reading of the form would lead the debtors to conclude erroneously that the security interest extends to all [consumer] goods . . . at any time the loan agreement is in effect, even though Illinois law precludes such a security interest covering consumer goods acquired more than 10 days after the secured party gives value.

The disclosures required here are not onerous and their uniformity is enhanced by the fact that the UCC has been adopted by 49 states. Moreover, the fact that defendants cannot in actuality claim any greater security interest than is allowed by state law is of no consequence. Although the inclusion of language in the forms which does not limit the security interest to 10 days fails to extend that interest beyond the limited period, it does mislead the consumer. As was stated in *Ives v. W. T. Grant Company,* 522 F.2d 749, 761 (2d Cir. 1975):

> Whether [a creditor] actually retains a security interest is irrelevant. On its face, the contract provides for a security interest and for [a creditor] to reveal later that there is none is hardly the type of disclosure Congress thought would "permit consumers to compare the cost of credit among different creditors and to shop effectively for the best credit buy."

Therefore the district court erred in dismissing these claims.

In the fourth case, No. 77–2032, the security agreement explicitly excepts "after acquired consumer goods acquired more than 10 days after the date hereof." Defendant in this case has complied with the

---

10. The extent of reliance on these letters to support defendants' position is itself open to question. Letter 829, August 22, 1974, seems to indicate that the strictures of state law must be followed in describing the security interest. While Letter 983, December 30, 1975, seems to backtrack from this position, Letter 1053, May 28, 1976, followed and stated:

It appears from your letter that these creditors are disclosing a security interest in "all

after-acquired property" or "all after-acquired property including all attachments, substitutions, and replacements." If, in fact, the applicable State law only permits acquisition of a security interest in after-acquired property acquired within a certain period of time, then such a statement would be improper under Regulation Z.

TILA and Regulation Z.[11] Dismissal of the complaint was properly allowed by the district court.

## IV

■ The next contention is that defendants[12] violated the TILA and Regulation Z, 12 C.F.R. § 226.6(a), which provides in relevant part:

(a) Disclosures; general rule. The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections.

*See also* 15 U.S.C. § 1631(a). This regulation is designed to insure that the disclosures follow a logical order and are not scattered throughout the agreement. *See* Staff Opinion Letter No. 780 (April 10, 1974), CCH Consumer Credit Guide ¶ 31,102.

*Allen v. Beneficial Finance Company of Gary,* 531 F.2d 797 (7th Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976), deals with the issue of meaningful disclosure. According to *Allen,* 531 F.2d at 801, "meaningful sequence" requires that disclosure statements basically must follow two criteria:

Thus, meaningful sequence first requires groupings of logically related terms. Second, meaningful sequence requires that the terms in these groupings be arranged in a logically sequential order emphasizing the most important terms.

11. Plaintiffs also attempt to premise a claim on language in the security interest purporting to cover "all substitutions and replacements." Assuming that substitutions and replacements for collateral cannot be the subject of a security interest after 10 days (*See Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815, 816 (7th Cir. 1976)), such goods must, by definition, be considered as being "of the same or similar type" as those secured. Thus the 10-day limitation contained in the agreement covers these goods as well:

Debtor further grants to Secured Party a security interest in all goods, personal property and chattels of the same or similar type or kind to that described above now owned or hereafter acquired, excepting only after acquired consumer goods acquired more than 10 days after the date hereof.

■ Plaintiffs complain that the disclosure statements make disclosures horizontally instead of vertically. This fact does not, however, make the disclosures misleading. The key factor is reasonable proximity and comprehensibility. As Staff Opinion Letter 780 (April 10, 1974) states:

We realize that it is not always practical to list the items in vertical order, but in keeping with the purpose of the Truth in Lending Act, they should be placed in reasonable proximity to each other so that the customer will not be required to search for any arithmetical items which should logically follow a previous one.

The forms involved here satisfy this requirement even though the disclosures are horizontal in nature.

■ Plaintiffs next suggest that the use of a subtractional disclosure in several of the forms violates the "meaningful sequence" rule. While it was noted in *Allen,* 531 F.2d at 802, 804, that the subtractional method is not favored, the court stated that the "requirements of meaningful sequence cannot be applied mechanically or rigidly."[13] In *Allen* the statement contained some figures listed horizontally and others listed in two vertical columns. Groupings of terms were located at random. The columns of numbers appeared to add up when in reality they did not. The same charge was listed twice under two different titles. The court, 531 F.2d at 802, described this attempt at disclosure as follows:

No valid claim of violation is therefore made.

12. This issue involves Nos. 78–1059 and 78–1061 through 78–1069. Plaintiffs also claim that Nos. 77–2029, 77–2030 and 78–1058 involve this issue. For the reasons discussed in note 2 *supra,* however, this issue was not reached in those cases and is not before us on appeal.

13. Subsequent to the decision in *Allen,* the Board issued Staff Opinion Letter No. 1047 (May 20, 1976), CCH Consumer Credit Guide ¶ 13,387, commenting on *Allen* that no particular form of statement was required so long as the relationship among the terms is clear, thereby providing the consumer with a clear and adequate basis on which to shop for credit.

The present defendant has failed in almost every respect to provide disclosures in meaningful sequence in the present disclosure statement. The court below cited ten instances in which the disclosure statement failed to set forth the required information in a meaningful sequence.

In contrast, the subtractional disclosure statements here contain a logically sequential series of disclosures beginning with the total amount of required payments, the finance charge, the amount financed, the charges for credit life, and credit disability insurance, the total number of payments and the annual percentage rate. Perusal of the forms indicate that while this particular sequence is not additional, it is logical and meaningful. This is all that the TILA, Regulation Z and the *Allen* decision require.[14] *See also* Official Staff Interpretation (March 21, 1977), CCH Consumer Credit Guide ¶ 31,552. Therefore, the decision of the district court that the disclosures in these forms were made in a "meaningful sequence" must be sustained.

## V

Two of the cases [15] concern the issue of whether, after filing a petition under Chapter XIII of the Bankruptcy Act, the debtors may respond to a filing of a claim or a reclamation petition by alleging TILA violations on the part of the creditor, even though the TILA claim is beyond the statutory limitation period. Plaintiffs contend that their action is not time barred since their claim is one of recoupment.

The limitation period for TILA claims provides in 15 U.S.C. § 1640(e):

Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

There is no dispute that debtors failed to make a claim within one year from the date of the occurrence. *See also Goldman v. First National Bank of Chicago,* 532 F.2d 10 (7th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976). Rather, debtors claim that somehow their action was revived when creditors made claims in response to debtors filing for voluntary bankruptcy under Chapter XIII. The bankruptcy judge and the district court rejected this claim in both cases.

Failure to bring an action for damages within the one-year limitation period bars the action. *See Jamerson v. Miles,* 421 F.Supp. 107 (N.D.Tex.1976); *Fenton v. Citizens Savings Association,* 400 F.Supp. 874 (C.D.Mo.1975). Where a counterclaim seeks to assert a separate cause of action for an independent wrong, it generally may not be instituted after the applicable statute of limitations has expired. *See Smith-Johnson Steamship Corp. v. United States,* 231 F.Supp. 184 (D.Del.1964). We believe that this rule applies to these cases as well. Debtors argue, however, that a counterclaim is not barred where it seeks "recoupment" rather than affirmative relief. This argument must fail here even assuming that the doctrine of recoupment may assist the claiming party in a given situation. *See Bull v. United States,* 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). The TILA claim presented by debtors seeks affirmative damages under 15 U.S.C. § 1640(a)(2). They do not claim however that they were actually damaged in any way as a result of the claimed TILA violation.[16] Nor do they claim that the

---

**14.** *See generally* Annotation, "Meaningful Sequence" Requirement of Regulation Z (12 C.F.R., pt. 226.6(a)), 33 A.L.R.Fed. 751 (1977).

**15.** Nos. 77–2180 and 78–1058. In 77–2180, plaintiffs also argue that the creditors violated Regulation Z § 226.8(a). For the reasons discussed in note 8 *supra,* this issue is not before us. Also, in light of our disposition of the statute of limitations issue, plaintiffs' further argument relating to the vacating of the default

judgment need not be addressed. In any case, the district court has wide discretion in granting such relief. *See* Fed.R.Civ.P. 60(b) and Bankruptcy Rules 755(b) and 924.

**16.** *See* 15 U.S.C. § 1640(a)(1). We express no opinion concerning the availability of a counterclaim after the limitation period where debtors would seek to have the recovery by creditor reduced by the amount of actual damages sustained by debtors in, for example, overpayment

alleged TILA violations somehow negate the validity of the underlying loan transaction.[17] The TILA claim is not directed at or an answer to the underlying debt.[18]

 Viewed in this manner, debtors in bankruptcy have brought suit for affirmative relief based on alleged TILA violations. The fact that the creditors being sued have filed claims in the bankruptcy proceeding has no material relevance. Debtors action is barred by the one-year statute of limitations contained in 15 U.S.C. § 1640(e).[19] The design of TILA was to provide protection to consumers by affording them meaningful disclosure and thereby an opportunity to shop for credit. It was not designed, nor should it be used to thwart, the valid claims of creditors. The district court properly dismissed these claims on the authority of the statute of limitations.

## VI

 In *Sharp v. First National Bank of Peoria,* No. 77–2197, plaintiffs, husband and wife, allege that defendant failed to give them any documents or disclosure statements necessary to comply with the TILA or the Motor Vehicle Retail Installment Sales Act of Illinois, Ill.Rev.Stat., ch. 121½, § 573. Defendant filed a motion to dismiss and attached a copy of a loan document signed by Robert N. Sharp. Plaintiffs responded by filing only an affidavit by Mary

Sharp. The district court granted defendant's motion to dismiss.

Plaintiffs' claim under the Illinois Statute is without merit. The statute is designed to apply where a retail automobile sales establishment provides or procures financing for the vehicles it sells, not where independent bank financing is obtained. *See generally Rivera v. Dick McFeely Pontiac, Inc.,* 431 F.Supp. 506 (N.D.Ill.1977); *Lucas v. Park Chrysler Plymouth, Inc.,* 62 F.R.D. 399 (N.D.Ill.1974). Thus, the section which plaintiffs claim defendant violated provides in relevant part:[20]

The seller shall deliver to the buyer a copy of the retail installment contract signed by the seller. Any acknowledgment by the buyer of delivery of a copy of the contract must be printed or written in a size equal to at least 10 point bold type and, if contained in the contract, must appear directly above the legend required above the buyer's signature by paragraph (1) of Section 3. The Buyer's written acknowledgement of delivery of a copy of the contract conforming to the requirements of this Act is conclusive proof of such delivery and of compliance with this Section in any action by or against an assignee of the contract without knowledge to the contrary when he purchases the contract.

This section clearly contemplates the situation where the automobile dealer, the "sell-

---

of finance charges. *See also* 15 U.S.C. § 1640(h). Certainly, however, such a claim is much closer to the concept of "recouping" something unlawfully taken by the creditor.

**17.** Thus, it has been held that the one-year limitation period does not apply to an action for rescission under 15 U.S.C. § 1635. *See Littlefield v. Walt Flanagan & Co.,* 498 F.2d 1133 (10th Cir. 1974).

**18.** It has been held that a TILA claim and the underlying loan transaction are not so related as to be the subject of a compulsory counterclaim under Rule 13(a), Federal Rules of Civil Procedure. *See Gammons v. Domestic Loans of Winston-Salem, Inc.,* 423 F.Supp. 819 (M.D. N.C.1976), and cases cited therein.

**19.** We recognize that the state courts have split on this question. *See generally* Annotation, Time Limitations Under 15 U.S.C. § 1640(e) on Truth In Lending Suits, 36 A.L.R.Fed. 657 (1978); Note, *Restrictions on Defenses and Counterclaims Based on Truth In Lending Violation,* 13 Wake Forest L.Rev. 189 (1977). This split is attributable mainly to a variation in state statutes. Even ignoring the questionable use of state statutes to modify a federal cause of action controlled by an explicit federal limitations period, such statutes do not bind the federal courts. *See also* 15 U.S.C. § 1640(h), which denies any offset under § 1640(a)(2) unless the liability has been judicially determined.

**20.** Ill.Rev.Stat., ch. 121½, § 573.

er," [21] arranges the financing and is therefore not applicable to the bank in this case.

Regarding the TILA claim, defendant filed a motion to dismiss and attached a copy of the loan agreement signed by Robert Sharp. The loan document provides, above Mr. Sharp's signature, that debtor "acknowledges receipt of a completely filled in copy prior to execution thereof." This acknowledgment by Mr. Sharp created a rebuttable presumption that the required disclosures were made.[22] Mr. Sharp failed to rebut this presumption by filing an affidavit or otherwise pleading further. The dismissal of the TILA claim was therefore proper.[23] *See Whitlock v. Midwest Acceptance Corp.,* 76 F.R.D. 190 (E.D.Mo.1977).

### VII

Plaintiffs' final claim is that the district court improperly dismissed the class action request in *Childs v. First National Bank of Peoria,* No. 77–2031.[24] In this case the complaint consisted of six counts, three of which were for class action relief and three of which were for individual relief. The district court dismissed the entire complaint, including the class action counts.

While the reasons for the dismissal of the class action counts by the district court are not clear from the record provided on appeal,[25] the district judge was not required to reach the issue since the individual substantive claims by plaintiff were dismissed.[26] In light of our holding in Part III that this plaintiff has stated a cause of action under TILA, we direct the district court, on remand, also to consider the class action allegations of the complaint in this case.

### VIII

The disposition of the cases in this appeal is as follows: Nos. 77–2032, 77–2197, 77–2180, 78–1058 through 78–1069, and 78–1198 are affirmed; Nos. 77–2029, 77–2030 and 77–2031 are reversed and remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART.**

---

21. Ill.Rev.Stat., ch. 121½, § 562.3, defines this term:

 "Retail seller" or "seller" means a person engaged in the business of selling motor vehicles to retail buyers in retail installment transactions.

 The bank is not in the business of selling motor vehicles. *See also* Ill.Rev.Stat., ch. 121½, § 562.4:

 "Retail installment transaction" means a credit sale of a motor vehicle by a retail seller to a retail buyer for a deferred payment price payable in one or more installments.

22. 15 U.S.C. § 1635(c) provides:

 Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

23. Plaintiffs argue that the filing of an affidavit by Mary Sharp should be sufficient. However, both the purchase agreement and the loan documents are signed by Robert Sharp alone. The loan agreement provides a place for a second debtor or co-signer to sign, but this space is left blank. It appears that Mary Sharp did not obligate herself in any way to defendant and therefore would not be entitled to disclosure. Her affidavit adds nothing to Robert Sharp's claim.

 In addition, if plaintiffs could have stated a claim under the Illinois Motor Vehicle Retail Installment Act, Mr. Sharp's acknowledgment would provide "conclusive proof" of delivery according to the terms of that statute.

24. Plaintiffs also argue that this issue involves No. 78–1060. In light of our holding in Part II of this opinion that the substantive cause of action was properly dismissed, we need not reach the class action issue in that case. In addition, defendants seem to believe that No. 78–1059 is also involved (Defendants' Brief p. 62). Plaintiffs do not argue this issue in their briefs with regard to this case (Plaintiffs' Brief pps. 93–102; *but see* p. 9). In any case, because of our conclusions in Parts II and IV that the substantive claims in this case were properly dismissed, we need not reach the class action issue.

25. Apparently the motion to dismiss was grantd at an oral hearing on September 6, 1977. The transcript of that hearing has not been provided to this court.

26. For example, the district court may have concluded that, since plaintiff's individual claims were meritless, plaintiff could not adequately represent the class for purposes of securing relief. Since the district court's reasons have not been presented to us, however, this is merely a surmise.